UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAWN VALLI, on Behalf of Herself and All Others Similarly Situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT** |
| vs. | ) ) | |
| AVIS BUDGET RENTAL CAR GROUP, LLC, and ATS PROCESSING SERVICES, LLC, | ) ) ) ) | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | ) ) ) | |
| _____ | ) | |

Plaintiff Dawn Valli, on behalf of herself and all others similarly situated, brings this action against Defendants Avis Budget Group, LLC ("Avis Budget") and ATS Processing Services, LLC ("ATS") (collectively, "Defendants") for compensatory, equitable, injunctive and declaratory relief. Plaintiff makes the following allegations based upon knowledge as to her own acts, and upon information and belief, as well as upon her attorneys' investigation, and alleges as follows:

## INTRODUCTION

1. This action concerns Defendants' deprivation of the due process rights of the consumer class alleged herein that rents motor vehicles from Avis Budget, and the consumers' resulting monetary damages. As alleged in detail below, Avis Budget pays alleged toll violations, speeding tickets, and other traffic infractions (collectively, "Fine(s)"), incurred by class members, often prior to providing them with notice of the alleged Fine, and then charges them an administrative fee for processing such violation. While the rental agreement between the class and Avis Budget (the "Rental Agreement") obligates the class members to pay Fines incurred in an Avis Budget vehicle during the rental term, the Agreement does not include a waiver of the class members' rights to timely notice of, and/or to contest, such alleged infractions; does not authorize Avis Budget to share the class members' personal information with, or delegate the processing of such fines to,

1

ATS; does not authorize Avis Budget to charge its customers an unreasonable and excessive processing fee; and does not authorize ATS or any other third party to charge or collect from the class members any fee.

2.      This action is brought on behalf of a nationwide class of persons who, during the applicable limitations period rented a motor vehicle from Avis Budget, and during the rental term were alleged to have incurred a Fine for a toll violation, speed violation and/or other traffic infraction (the "Class").

3.      Avis Budget unilaterally chooses to pay such Fines on behalf of Class members to the authority that issued the alleged violation, very often, if not always, without notice to the Class member, and without making any effort to contest the alleged Fine on behalf of the Class member, even though Avis Budget has no knowledge as to whether the Class member actually committed the purported infraction.

4.      Avis Budget contracts with ATS to process and administer the payment of the Fines for, and the collection of the Fines from, the Class. However, the Class did not enter any contractual agreement with ATS. Nevertheless, Avis Budget, together with ATS, not only pay the Fines without any meaningful notice to the Class, but they also charge and collect from the Class an unreasonable and excessive handling or administration fee, that serves as a profit center for both

Avis Budget and ATS.  Nowhere in the Rental Agreement is the amount of such fee disclosed to members of the Class.

5.     As a result of Defendants' conduct, Plaintiff and the Class have been injured in the form of, *inter alia*, the deprivation of their due process rights to contest the Fines, and economic injury, including the obligation to pay Defendants an unreasonable and excessive administration/handling fee.

### PARTIES

### I.     Plaintiff

6.     Plaintiff Dawn Valli is a resident of Broward County, Florida.  She rented a car from Avis Budget, during which time Defendants paid a Fine for a speeding violation issued against the vehicle during the rental period.  Defendants did not provide Mrs. Valli any notice of the alleged speeding violation until after Defendants paid the Fine. Defendants charged Mrs. Valli's credit card $180 – the violation amount of $150 and an unreasonable and excessive "handling fee" of $30.

### II.     Defendants

7.     Defendant Avis Budget is a Delaware limited liability company with its principal place of business and North American Headquarters in Parsippany, New Jersey. Avis Budget does business throughout New Jersey, including in this District, and throughout the nation. Avis Budget rents cars and trucks to consumers

under the brand names "Avis" and "Budget". Upon information and belief, all of Avis Budget's polices, practices, and business decisions relating to the facts alleged in the instant complaint were made in and/or originated from Avis Budget's New Jersey headquarters.

8.     ATS, headquartered in Scottsdale, Arizona, with regional facilities in New York City, and other U.S. cities, is a division of American Traffic Solutions, Inc. ATS contracts with companies such as Avis Budget "to ensure vehicle owners are not held financially responsible for violations committed by drivers such as parking tickets or other traffic-related citations mailed to the vehicle owner." ATS administers and processes the collection from the Class of the Fines paid by Avis Budget and/or ATS on behalf of the members of the class, and in concert with Avis Budget imposes an administration fee/handling fee on the Class.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than the Defendants. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court has personal jurisdiction over Defendants because they are

authorized to do business and to conduct business in New Jersey, they have specifically marketed and sold their services in New Jersey, and have sufficient minimum contacts with this state and/or sufficiently avail themselves of the markets of this state to render the exercise of jurisdiction by this Court permissible.

10.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted herein occurred in this District and Defendants are subject to personal jurisdiction to the federal court in this District.  Moreover, Defendants inhabit and/or may be found in this judicial district and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

## FACTUAL ALLEGATIONS

**I.     Defendant Avis Budget**

11.    Defendant Avis Budget enters contracts known as Rental Agreements with the members of the class.  The Rental Agreements provide in part as follows:

> 15. **Fines, Expenses, Costs and Administrative Fees**. You'll pay all fines, penalties, and court costs for parking, traffic, toll and other violations, including storage liens and charges. You will also pay a reasonable administrative fee with respect to any violation of this agreement, such as repossessing or recovering the car for any reason.

*See* Rental Agreement attached hereto as Exhibit A.

12.    The Rental Agreements do not include any language that serves to waive the rights of the Class to receive notice of the alleged Fines or to contest the alleged Fines.

13.    The Rental Agreements do not define or otherwise identify the amount that Avis Budget will charge the Class for the "reasonable administrative fee."

14.    The Rental Agreements do not authorize any third party to pay any Fine on behalf of the Class, collect the amount paid for a Fine from the Class, or charge the Class any administrative, handling or any other, fee.

## II.    Avis Budget's Relationship With ATS

15.    American Traffic Solutions, the parent of ATS, claims to adhere to a "strong consciousness towards ... the general public", which includes an "approach [] to proactively address compliance and ethics before potential issues arise."  ATS maintains that its Ethics Program, which incorporate the company's values of "integrity" and "respect" is an "integral part of how ATS does business.

16.    ATS's Code of Business and Ethics includes the following tenets:

> "Our reputation for integrity and excellence requires careful observance of the spirit and letter of ***all applicable laws and regulations, as well as a scrupulous regard for the highest standards of conduct and personal integrity.***
>
> ...

ATS will comply with all applicable laws and regulations and expects its directors, officers, and employees to conduct business in accordance with the letter and spirit, of ***all relevant laws and regulations as well as to refrain from any dishonest or unethical conduct***.

….

The Code is designed to promote ATS values and to deter any wrongdoing. The Code is crucial to ensure that our employees—as well as the ***public at large***—are aware of the standards we have set for ourselves.

….

We will ensure that all disclosures made in financial reports and documents are ***full, fair***, accurate, timely and understandable."

(Emphasis added).

17.    According to its website, "[Defendant] ATS Processing Services contracts with companies that own a fleet of vehicles such as, but not limited to rental car companies, to ensure vehicle owners are not held financially responsible for violations committed by drivers such as parking tickets or other traffic-related citations mailed to the vehicle owner."

18.    Upon information and belief, Defendant ATS and Defendant Avis Budget entered a contract pursuant to which ATS collects Fines that Defendants pay on behalf of the Class, and also collects from the Class administration and handling fees that Defendants unilaterally set and charge to the Class.

### III.   Defendants' Deprivation Of The Due Process Rights Of, And Imposition Of Excessive Fees Upon, The Class

#### A.   Defendants Pay Fines Allegedly Incurred by Class members Without Notice to the Class

19.   Local and state governments throughout the United States use automated devices to identify and record alleged traffic infractions, such as the failure to pay tolls, speeding, running red lights, and other infractions.   The authority that issues tickets and seeks to impose Fines for such infractions typically mails the ticket to the vehicle owner. The issuing authority identifies the owner by capturing a photograph of the vehicle's license plate, and identifying the owner from databases that allow the matching of the owner's name and address to the license plate number.  As a result, the recipients of such alleged infractions are not aware of the allegations against them until receipt by mail of the notice from the issuing authority.

20.   Upon receipt of such tickets, Defendants do not immediately notify the respective Class member.  Rather, to "ensure" that Avis Budget is not held responsible for the alleged Fine, Defendants first pay the alleged Fines, and subsequently provide notice to the Class member.  However, by the time the notice has been issued, the Class member's opportunity to contest the Fine has been lost; Avis Budget has paid the ticket, effectively admitting the Class Member's guilt;

the matter closed, and the only remaining step is Defendants' collection of the amount paid from the Class, along with the handling fee.

**B.    Defendants Charge the Class Unreasonable and Excessive Fees**

21.    While Avis Budget's Rental Agreement discloses that it will charge the Class a "reasonable" administration fee for processing the payment of Fines, the Rental Agreement is silent as to the amount that will be charged.

22.    Defendant ATS' collection system is largely automated.  ATS sends form letters to each Class member, who typically pays the Fines online using credit cards.

23.    Although Defendant ATS' cost in human labor and time to "process" the Fines is relatively small, Defendants impose an unreasonable and excessive handling fee, which allows Defendant ATS to earn a profit from such activity, and presumably to share a portion of such profits with Defendant Avis Budget.  In other words, by depriving the Class of the opportunity to exercise their due process rights to contest the alleged Fines, Defendants profit, while the Class is damaged.

**IV.    Defendants Paid An Alleged Fine On Behalf Of Class Representative Dawn Valli, And Then Charged Her An Unreasonable And Excessive Handling Fee**

24.    On June 11, 2014, Dawn Valli rented a car from Defendant Avis Budget at the company's Baltimore-Washington airport. *See* Rental Agreement

9

attached hereto as Exhibit A. She returned the car on June 16, 2014. *See* Rental Receipt attached hereto as Exhibit B.

25. During Mrs. Valli's rental period, the District of Columbia Metropolitan Police Department purportedly determined that on June 11, 2014, someone driving the car rented by Mrs. Valli drove the car at 52 mph in a 35 mph zone. *See* Notice of Infraction attached hereto as Exhibit C. In fact, the car was driven by Mrs. Valli's husband, Frank Valli, for the entirety of the rental period.

26. The District of Columbia claims that it determined the speed of the car by photographing it, and through the use of radar calculated the speed of the car.

27. Just 7 days after the alleged violation, on June 18, 2014, the District of Columbia mailed the Notice of Infraction to the vehicle owner, which it determined from the license plate. *Id*. The vehicle owner is identified as PV Holding Group, which is a subsidiary of Avis Budget. *Id*. The Notice of Infraction includes "DIRECTIONS FOR ANSWERING":

> YOU HAVE 60 CALENDARS DAYS FROM THE MAIL DATE OF THE TICKET. IF YOU DO NOT PAY OR CONTEST THE TICKET WITHIN 30 CALENDAR DAYS OF THE MAIL DATE OF THE TICKET YOUR FINE WILL DOUBLE.
>
> Please choose one of the following answers: 1) **Admit** Pay the full amount due; 2) **Admit with an Explanation** Request in writing that the fine associated with the violation be reduced; or 3) **Deny** Appear for an in-person hearing between the hours 8:30 am - 4:00 pm Monday-Friday [.]

28.     The Notice of Infraction plainly warns the recipient that "[i]f [they] want to contest the ticket, penalty, or both ***do not pay*** the ticket until you receive your decision from DMV." *Id.* (emphasis added).

29.     The Notice provides the recipient sixty (60) days to contest or pay the ticket, and the alleged fine is $150 if paid within 30 days and $300 if paid within 60 days.  In Mrs. Valli's case, these deadlines were as follows:

   a.     August 17, 2014 – Deadline to **Contest** the Ticket

   b.     July 18, 2014 – Deadline to Pay the Ticket for $150.00

   c.     August 17, 2014 – Deadline to Pay the Ticket for $300.00

30.     Defendants wasted no time in depriving Mrs. Valli of the right to contest the ticket.  Defendants paid the ticket on receipt, or almost immediately thereafter.  This is evidenced by the fact that on July 3, 2014 –45 days before the expiration of the time period allowed for contesting the ticket, and 15 days before the fine increased from $150 to $300 – Defendants sent Mrs. Valli an AVIS RENT A CAR VEHICLE VIOLATION NOTICE, advising that Defendants had already paid the fine in the amount of $150.00, and demanding that she pay such amount, along with a $30 "handling fee," to Avis Budget.

31.     If Mrs. Valli had received timely notification of the Fine, and Avis Budget had not unilaterally paid the Fine on her behalf, she would have had three options:  Pay the Fine; adjudicate the citation by mail or request a hearing.  By

paying the Fine without notice to Mrs. Valli, Avis Budget wrongfully and impermissibly forced upon Mrs. Valli an admission of guilt without an opportunity to be heard.

32.     In its FAQs, the Metropolitan Police Department answers the question "What do I do if I receive a ticket in the mail?" as follows:

> A ticket issued through the District of Columbia's Automated Traffic Enforcement Program is the same as any other moving ticket issued within the city limits. ***You may pay the fine, which is an admission of guilt;*** adjudicate the citation by mail, or request a hearing. Specific instructions are included on the back of each NOI that is mailed. Failure to respond to the ticket, either by paying the fine or requesting a hearing within the specified time frame, can result in additional fees and penalties. Telephone or mail responses are encouraged.

http://mpdc.dc.gov/page/automated-speed-enforcement-faq (emphasis added).

33.     Incredibly, Defendants only afforded Mrs. Valli until August 2, 2014 to voluntarily pay the amount demanded, or Defendant Avis Budget would simply charge such amount to Mrs. Valli's credit card.  Defendants' payment deadline was 15 days prior to the date originally afforded by the District of Columbia for Mrs. Valli to exercise her rights to contest the ticket.

34.     Of course, by the time Mrs. Valli received Defendants' Vehicle Violation Notice, her opportunity to contest the ticket had already been unilaterally waived by Defendants.  After she received the Avis Rental Car Vehicle Violation Notice dated July 3, 2014, Mrs. Valli contacted the issuing agency in an attempt to

contest the ticket, but was advised that the payment was considered an admission of guilt, which did not permit her an opportunity to dispute the infraction.

## V.     The Conduct At Issue Is Centered In New Jersey

35.     Much of the conduct at issue arises and emanates from New Jersey. As detailed above, Defendant Avis Budget, whose contract and conduct upon which this case is primarily based, is headquartered in Parsippany, New Jersey. Upon information and belief, all policies and procedures pertaining to decisions concerning Defendants' alleged conduct initiated from New Jersey.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff brings this action on behalf of herself and all members of a class comprised of all persons who, during the limitations period applicable to this action, (a) rented a motor vehicle from Defendant Avis Budget, (b) were issued a fine, penalty, and/or court costs for parking, traffic, toll or other violation, and (c) on whose behalf Defendants (i) paid the Fines prior to giving the Class notice of the alleged Fine or (ii) collected from the Class an administrative and/or handling fee (the "Class").  Excluded from the Class are persons that received parking tickets or any other ticket at the time they were issued.

37.     The Class is so numerous that joinder of all members is impracticable.

38.    There are many common questions of law and fact involving and affecting the parties to be represented.  These common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

(a)    Whether Defendants unilaterally and illegally waived the rights of the Class to receive notice of alleged Fines before such Fines are paid by Defendants;

(b)    Whether Defendants pay Fines prior to giving notice to the Class of the alleged Fine;

(c)    Whether Defendants' administrative and handling fees are reasonable;

(d)    Whether Defendants engaged in deceptive and unfair business and trade practices;

(e)    Whether the Class has been injured by virtue of Defendants' unfair and/or deceptive business practices and conduct; and

(f)    Whether the Class is entitled to injunctive relief.

39.    Plaintiff's claims are typical of the claims of the respective Class she seeks to represent, in that the named Plaintiff and all members of the proposed Class (a) rented a motor vehicle from Defendant Avis Budget, (b) were issued a fine, penalty, and/or court costs for parking, traffic, toll or other violations, and

(c) Defendants (i) paid the Fines prior to giving the Class notice of the alleged Fine or (ii) collected from the Class an administrative and/or handling fee.

40.    Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class actions and complex litigation as her counsel.

41.    Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief.

42.    Plaintiff avers that the prerequisites for class action treatment apply to this action and that questions of law or fact common to the Class predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action.  Plaintiff further states that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of this Class will not be difficult.

## CLAIMS FOR RELIEF

## COUNT I
### (Violation of the New Jersey Consumer Fraud Act,
### N.J.S. §§ 56:8-1, *et seq.* as to all Defendants)

43.     Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

44.     Plaintiff brings this cause of action individually and on behalf of the Class as defined above.

45.     This Count arises under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq.*, and is brought on behalf of the Plaintiff and members of the Class pursuant to §§ 56:8-19 and 56:8-2.12 of the Act.

46.     Section 56:8-2 provides, in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

47.     Plaintiff and other members of the Class are consumers who rented motor vehicles from Defendant Avis Budget pursuant to a consumer transaction for

16

personal use and are, therefore, subject to protection under the New Jersey Consumer Fraud Act, N.J.S. § 56:8-1, *et seq*.

48.    Defendants' acts, practices, misrepresentations, concealments, and omissions of material facts in connection with the rental of motor vehicles constitute unlawful practices within the meaning of the New Jersey Consumer Fraud Act.

49.    Defendants engaged in unlawful practices by (a) failing to disclose that Defendants would pay any alleged Fines imposed upon the members of the Class prior to giving them notice of the alleged Fines and the opportunity to contest such Fines and/or (b) charging the Class unreasonable and undisclosed administration and/or handling fees for the processing and collection of such Fines paid by Defendants on behalf of the Class.

50.    As a result of the use and employment by Defendants of the unlawful acts, Plaintiff and the other Class members have suffered an ascertainable loss of money or property and have been damaged thereby.

51.    Under N.J.S. §§ 56:8-2.11, 56:8-2.12 and 56:8-19, Plaintiff and the other Class members are entitled to compensatory damages, including treble damages, attorneys' fees, and cost of suit.

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing as to Defendant Avis Budget)

52.     Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

53.     Defendant Avis Budget and the Class entered contracts that contain an implied covenant of good faith and fair dealing that required Avis Budget to conduct its business with the Class in good faith and deal with them fairly.

54.     Defendant Avis Budget breached the implied covenant of good faith and fair dealing by (a) failing to disclose that Defendants would pay any alleged Fines imposed upon the Class prior to giving them notice of the alleged Fines and would deprive them of the opportunity to contest such Fines and (b) charging the Class unreasonable and undisclosed administration and/or handling fees for the processing and collection of such Fines paid by Defendants on behalf of the Class.

55.     Plaintiff and the Class have been damaged as a direct and proximate result of Defendant Avis Budget's conduct.

## COUNT III
### (Unjust Enrichment Against All Defendants)

56.     Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

57.     Defendants received, and continue to receive, a benefit at the expense of Plaintiff and the Class members in the form of "administration fees" and "handling fees" which Plaintiff and the Class members did not agree to pay in the amounts charged by Defendants.

58.     Defendants knowingly and intentionally accepted and retained these unreasonable and undisclosed fees provided by Plaintiff and the Class members.

59.     As a direct and proximate result of Defendants' improper retention of unreasonable and undisclosed fees, Plaintiff and the Class members were deprived of the use of their money that was unlawfully charged and collected by Defendants, and are therefore entitled to reimbursement of any money unjustly paid to Defendants.

60.     It would be unjust and improper under the circumstances to allow Defendants to retain these unreasonable and undisclosed fees.

61.     Plaintiff and the Class members have no adequate remedy at law to recover these unreasonable and undisclosed fees from Defendants Avis Budget and ATS.

**WHEREFORE, PLAINTIFF PRAYS FOR RELIEF AS FOLLOWS:**

62.     That this action be certified as a class action on behalf of the proposed Class of all persons who during the limitations period applicable to this action, (a) rented a motor vehicle from Defendant Avis Budget, (b) were issued a fine,

penalty, and/or court costs for parking, traffic, toll other violation, and (c) on whose behalf Defendants (i) paid the Fine prior to giving the Class notice of the alleged Fine or (ii) collected from the Class an administrative and/or handling fee.

63.     Monetary damages and/or restitution, as appropriate;

64.     Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Class has an effective remedy, including enjoining Defendants from continuing the unlawful practices as set forth above, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

65.     Punitive damages;

66.     Awarding a declaratory judgment with damages awarded as supplemental relief;

67.     Awarding all costs, including experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and

68.     Such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  September 30, 2014

KAPLAN FOX & KILSHEIMER LLP

By: _____
William J. Pinilis

William J. Pinilis
wpinilis@kaplanfox.com
160 Morris Street
Morristown, NJ  07960
Telephone:  (973) 656-0222
Facsimile:  (973) 401-1114

KAPLAN FOX & KILSHEIMER LLP
Laurence D. King
lking@kaplanfox.com
Linda M. Fong
lfong@kaplanfox.com
350 Sansome Street, Suite 400
San Francisco, CA  94104
Telephone:  (415) 772-4700
Facsimile:  (415) 772-4707

Marc A. Wites
mwites@wklawyers.com
WITES & KAPETAN, P.A.
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone:  (954) 570-8989
Facsimile:  (954) 354-0205

Attorneys for Plaintiff

# EXHIBIT A

## Rental Terms and Conditions

1. These terms and conditions, the rental document signed by you, and a return record with computed rental charges together constitute the rental agreement between yourself and Avis Rent A Car System, LLC, or the independent Avis System Licensee identified on the rental document ("Avis"). Further references to the "rental document" alternatively mean the front of this terms, if there is no separate rental document.

2. You must return the car described on the rental document, which rental is solely a bailment for mutual benefit. You agree to the terms below and on the other panels of this Rental Document Jacket provided any such term is not prohibited by the law of a jurisdiction covering this rental, in which case such law controls. "You" and "your" refer to the person who signs this agreement. "We", "our" and "us" refer to Avis. You also agree that you are not our agent for any purpose; and that you cannot assign or transfer your obligations.

3. **Return of the Car.** You must return the car in the same condition you received it, ordinary wear and tear excepted, on the date and at the time indicated on the rental document. You must return it sooner on our demand. If you return it earlier or later, a different or higher rate may apply and, if returned later, you may be charged a late return fee. You may not return the car at a time when we are closed. If you do, your responsibility for damage to or loss of the car will continue and all charges stated on the rental document as a periodic rate will continue to accrue until the return location reopens and we retake actual possession of the car. If we do not find the car when that location reopens, your responsibility for all charges and for damage to or loss of the car will continue until the car is actually returned or recovered. If you wish to extend any rental you must contact us at 1-888-897-8448 to request it before your return date. We may or may not grant an extension or grant it for the entire period you request, in our sole discretion. If we do grant an extension a different or higher rate may be applied to the extension period and a service fee may also apply. **Failure to return rental property or equipment upon expiration of the rental period and failure to pay all amounts due (including costs for damage to property or equipment) are prima facie evidence of intent to defraud, punishable in accordance with Section 812.155, Florida Statutes.**

4. **Where You'll Return the Car.** The car must be returned to the agreed return location as specified on the rental document. If return is indicated to a location other than the location where return is indicated to a location other than the location where fee*. If you return the car to a different location from the agreed return location without our permission, you agree to pay the "unauthorized return location fee" specified by us. If this fee is higher by multiplying normal mileage rate by distance between renting location and actual return location as specified on the return document/return record, you'll pay the higher fee. You also understand that a different or higher rate may apply.

5. **Rental Charges.** You will pay for the number of miles you drive and the period of time you rent the car at the rate indicated on the rental document. The minimum charge is one day (24 hours), unless "calendar day" is indicated on the rental document, plus

F-131FL(7/13)

---



## Special Offer

### Save up to $20 AVIS®
### on your next rental*

To get this great offer,
go to **avis.com/comebacksoon**

*Terms and conditions apply.

## Destination Everywhere



AVIS®

Add Where2® GPS to
your next Avis rental
Go to avis.com/services today.

## Savings For Small Business

Sign up for Avis Corporate Awards® to start enjoying benefits including:
- Low corporate rates that are up to 25% off
- Reward Days
- Complimentary Avis® Preferred℠ Service

Enroll today at avis.com/smallbiz
or call 1-800-537-8269. It's FREE!

**AVIS CORPORATE AWARDS** PROGRAM

©2013 Avis Rent A Car System, LLC   F-131FL(7/13)

Printed 7/13

---

# AVIS®

NAME

CAR SPACE NO.

COLOR/MODEL

LICENSE PLATE NO.

CAR NO.

**e-RECEIPT℠ OPTION**
If you have opted in, you'll receive an e-Receipt for this rental. If not, take advantage of this time-saving service by updating your profile with your email address and opt-in to receive e-Receipt on future rentals.

**IMPORTANT CAR RETURN INFORMATION**
If paying by charge card, indicate mileage, gas level and time, and drop your rental agreement into the Express Car Return Box. A copy of your bill will be sent to you. Remember, you remain responsible for the car until we retake actual possession.

| RETURN MILEAGE | RETURN DATE | RETURN TIME |
| --- | --- | --- |
| | | AM / PM |

DID YOU PURCHASE FUEL?   ☐ YES   ☐ NO

GAS GUAGE: (check box if applicable)
E  1/8  1/4  3/8  1/2  5/8  3/4  7/8  F

**\*PLEASE NOTE:**
If you don't indicate your gas guage reading, you may be charged for a full tank of gas.

## For Reservations Visit Us @ avis.com

| RENTING LOCATION PHONE NUMBER | SEE RENTAL DOCUMENT |
| --- | --- |
| RENTAL EXTENSIONS | 1-888-897-8448 |
| EMERGENCY 24-HOUR ROADSIDE ASSISTANCE | 1-800-354-2847 |
| RESERVATIONS | 1-800-331-1212 |

That's why for not smoking. Avis maintains a 100% smoke-free fleet.

F-131FL(7/13)

mileage, or a fixed fee. We will determine the miles by reading the factory-installed odometer. The daily charge applies to consecutive 24 hour periods starting at hour and minute the rental begins or, if a calendar day is specified on the rental document, each consecutive calendar day or any part of a calendar day starting on calendar day on which the rental commences. If you fail to comply with any conditions for special rates specified on the rental document or otherwise applicable rate be charged. You'll pay all charges that apply to the rental for miscellaneous services and, where permitted, airport facility fees and/or concession recovery fees, and/or license recovery fees, other fees and surcharges. If you present any rewards certificate coupons or vouchers associated with a loyalty rewards program, you may be charged a redemption fee. You will pay a reasonable fee for cleaning the car's interior upon return for excessive stains, dirt or spoilage attributable to your use. We maintain a non smoking fleet. You will pay an additional charge if you smoke in the car. You and any third party to whom any rental charges are billed, such as an insurer or employer, are jointly and severally responsible for payment of all such charges. If you direct to bill any such charges to a third party, you represent that you are authorized to so. If you use a car with an automatic toll payment capability, you will pay us or our program administrator for all tolls incurred during your rental and all related charges and penalties. Avis issues discount codes to individuals. By entering this rental agreement you represent you have the express authorization of Avis such codes. Any other use will be viewed as an unlawful use and theft of service which Avis can pursue legal remedies including but not limited to reason attorneys fees and costs.

6. **Taxes.** You'll pay all taxes, use, rental, environmental and excise taxes, including related surcharges.

7. **Loss Damage Waiver.** Loss Damage Waiver (LDW) is not insurance and mandatory. If you accept full LDW by your initials on the rental document at the rate, for each full or partial day that the car is rented to you, and the car is operated accordance with this agreement, we assume all loss or damage to the car except permitted by law, for lost, damaged or stolen keys or remote entry devices, towing tire service unless related to an accident, or recovery of the car if stolen, and except for your amount of "responsibility" as specified on the rental document. Partial Damage Waiver (PDW) is available only where permitted by law. If you accept at the indicated daily rate, and the car is operated in accordance with this agreement we assume all loss or damage to the car up to the amount as specified on the rental document and you accept responsibility for all other loss or damage. If you do not accept either LDW or PDW, you owe for all loss or damage to the car. Loss and damage are described in the following paragraph. You acknowledge you have been advised that your own insurance may cover loss or damage to the car. **You acknowledge reading the notice on this form, or on a separate notice form, as required at the end of these terms, or in a separate notice form.**

8. **Damage/Loss to the Car.** If you do not accept LDW, or if the car is lost or damaged as a direct or indirect result of a violation of paragraph 17, you are responsible, you will pay us for all loss of or damage to the car regardless of cause, or who, or caused it. Where permitted by law, you authorize us to charge you for the actual of repair or replacement of lost or damaged items such as glass, mirrors, and antennas as part of your rental charges at the time of return. If the car is damaged, you will our estimated repair cost, or I, in our sole discretion, we determine to sell the car, in its damaged condition, you will pay the difference between the car's retail fair market value before it was damaged and the sale proceeds. If the car is stolen and recovered you will pay for loss of use of the car, without regard to our fleet utilization plus an administrative fee, towing and storage charges, if any ("Incidental Loss"). If your responsibility is covered by any insurance, you will provide us with the name of the insurer and policy number, or if the expense is provided by your card is its insurer. You authorize us to process any or all of our Incidental Loss to your

## Additional Liability Insurance (ALI)

**What Is Additional Liability Insurance (ALI)?**

Avis has Additional Liability Insurance (ALI) available at all Florida locations. ALI is a special optional service offered by Avis when you rent a car from Avis. It's an "Excess Automobile Liability Insurance Policy" that provides additional liability insurance, within specified limits, above the limits provided in this Rental Agreement. ALI insures you, and authorized operators as defined in this Rental Agreement against claims made by third parties against you, the customer, for bodily injury/death and property damage caused by the use or operation of an Avis rental vehicle as permitted in this Rental Agreement. ALI is a separate insurance policy issued to Avis by ACE American Insurance Company.

If you elect to accept ALI for an additional daily charge as shown on this Rental Agreement, the purchase of ALI is not required in order to rent a car from Avis.

**What are the coverage limits provided by ALI?**

The ALI coverage limits equal the difference between the minimum financial responsibility limits, if any, provided under paragraph 19 of this Rental Agreement and the ALI maximum $2,000,000 combined single limit per occurrence.

**When and where does ALI coverage apply?**

You and authorized operators are covered while driving the rental car within the United States and Canada, but only if the car is rented and returned in the United States. Coverage does not apply in Mexico.

**How do I report a claim?**

If you are involved in an accident, you must complete an accident report and deliver it to the Avis rental location. In order to make a claim or give notice of a claim, send written notice to:

Corporate Insurance Dept.
6 Sylvan Way, Parsippany NJ 07054
1-866-446-8376

**How does ALI affect the application of your automobile or umbrella insurance policy?**

Your personal insurance policy providing coverage on an owned automobile, or other personal policy, may provide additional coverage, and to that extent, ALI may provide a duplication of coverage. Whether, at what point, and to what extent, your own policies apply can only be determined by your checking the terms of the policies themselves as these terms frequently vary. However, if ALI is accepted the protection afforded by ALI, and the limits of protection under this Rental Agreement, are primary to your own policies. This means that before your own policies would apply to pay a claim the $2,000,000 protection afforded by the combination of ALI and financial responsibility limits under this Rental Agreement limits would have to be exhausted. If you do not accept ALI your insurance, if any, is primary as stated on this Rental Agreement.

**What exclusions apply to ALI?**

The following highlights some of the exclusions that would preclude ALI. It is important that you read the rental agreement and the policy carefully for all exclusions.

• Any Prohibited Use of the Car as described in paragraph 17 of this rental agreement.

• Bodily Injury to or Property Damage to any insured; nor, to the extent permitted by law in the state where the Rental Agreement is signed, to Bodily Injury or Property Damage to any person who is related to any insured by blood, marriage or adoption and residing in the same household.

• "Uninsured Motorist"/"Underinsured Motorist" coverage are not provided by the policy except in states where mandated by law up to maximum amount of $100,000 of in such amounts as mandated by law.

• "No Fault" and other supplemental or optional coverages are not provided by the policy.

• Punitive or exemplary damages to the extent permitted by law.

**Are there any special restrictions on the purchase of ALI?**

In Florida, ALI may not be purchased if the term of the Rental Agreement is for more than 30 days; coverage may not be provided for more than 30 consecutive days; and if the Rental Agreement is extended beyond 30 days, the coverage may be extended for one time only, for a period not to exceed 30 days.

For more information call Avis toll-free at: 1-800-331-1212
Visit Avis online at avis.com

This is a summary only of ALI, the specific terms, conditions and exclusions thereof are subject to all provisions, limitations and exclusions contained in the rental agreement and the ALI policy issued by ACE American Insurance Company, one of the U.S.-based subsidiaries of ACE Limited (NYSE: ACE). "ACE" and the ACE logo are service marks of the ACE Group, which is comprised of ACE Limited and its subsidiaries.

This summary is not intended to provide a complete description of the policy's terms, conditions and exclusions. For additional details, we invite you to examine a copy of the policy, which is available for your inspection, upon request, at the Avis location at which you are renting.

Avis employees, agents, or endorsees are not qualified to evaluate the adequacy of the renter's existing coverage.

at or after the completion of your rental. You also authorize us to collect any or all of our loss from any third party that is responsible for it. If we collect our loss from a third party after we have collected our loss from you, you will refund the difference, if any, between what you paid and what we collected from the third party. If the law of a jurisdiction covering this rental requires conditions on LDW that are different than the terms of this agreement, such as if your liability for ordinary negligence is limited by such law, that law prevails. You understand that you are not authorized to repair or have the car repaired without our express prior written consent. If you repair or have the car repaired without our consent, you will not be reimbursed for the cost of the repair even if the condition it was in prior to your rental. If we authorize you to have the car repaired, we will reimburse you for those repairs only if you give us the repair receipt.

**9.** **Loss Damage Waiver Fee.** If you accept LDW, you'll pay the daily LDW rate as specified on the rental document. If PDW is available, and you accept LDW instead of LDW, you'll pay the daily PDW rate as specified on the rental document. In either case, you agree to pay the applicable daily rate for a full day if you don't have the car for the entire day. The fee is the applicable daily rate multiplied by the number of rental days.

**10.** **Fuel Service Charge.** Most rentals come with a full tank of fuel, but that is not always the case.

(a) Where available, if permitted by law, if you drive less than 75 miles, you acknowledge that we will add a flat fee to the rental, the amount of which will be disclosed on the rental document and at the counter prior to rental. You may avoid this charge at time of return by providing a receipt for fuel purchased at which time the flat fee will be reversed from your total rental charges.

If (a) does not apply, there are three refueling options:

(b) If you do not accept the fuel service option, where available, at the beginning of your rental, and you return the car with less fuel than was in it when you received it, we will charge you a fuel service charge at the applicable rate per-mile or per-gallon rate specified on the rental document. The per-mile rate is used if you do not buy fuel during the rental. To calculate this amount, we multiply the number of miles driven, as shown on the car's odometer, times the per-mile rate shown on the rental document. The per-gallon rate is used if you buy fuel during the rental and provide us with a receipt on our request, but the tank is not as full when you return the car as when you received the car (by using the factory-installed gauge, rounded down to the nearest 1/8 tank), times the per-gallon rate shown on the rental document. Although two methods are used for ease of calculation, the per-mile and per-gallon rates produce approximately the same result.

(c) If you accept the fuel service option at the beginning of your rental, you will be charged as shown on the rental document for that purchase and you will not pay us a fuel service charge. If you choose this option, you will not incur an additional fuel service charge, but you will not receive any credit for fuel left in the tank at the time of return. The per-gallon cost of the fuel service option will always be lower than the fuel service charge. The cost of refueling the car yourself at a local service station may be lower than the fuel service option. You acknowledge that the fuel service charge is not a retail sale of fuel.

(d) You may avoid a fuel service charge if you return the car with the fuel tank as full as when you received it and, if requested by us, present a receipt for your fuel purchase.

**11.** **Emergency Sickness Protection ("ESP"),** where available, is available only to Canadian renters and international renters with valid non-U.S. passports. You'll pay for ESP, if you accept it. You'll be charged the rate per day for a full day even if you don't have the car for the entire day. ESP is offered by an independent insurer and is explained in a brochure available at the counter.

**12.** **Personal Accident Insurance (PAI).** You'll pay for Personal Accident Insurance if you accept it. You understand that you are solely responsible for it. If we collect our loss from a third party after you, we will be charged the rate per day for a full day even if you don't have the car the entire day.

**13.** **Personal Effects Protection (PEP) Insurance.** You'll pay for PEP insurance if you accept it. You will be charged the rate per day for a full day if you don't have the car for the entire day.

**14.** **Roadside SafetyNet.** Roadside SafetyNet (RSN) is not insurance and is not mandatory. Where available, you'll pay for RSN, if you accept it at the rate shown on the rental document for each full or partial rental day. RSN provides roadside assistance at no charge in addition to the daily rate for: lost keys and remote entry devices, lockouts, flat tire service, towing (if the car becomes inoperable), jump starts, emergency fuel delivery (up to 3 gallons, as we determine is needed). Prohibited use of the car will void RSN's option.

**15.** **Fines, Expenses, Costs and Administrative Fees.** You'll pay all fines, penalties and court costs for parking, traffic, toll and other violations, including storage liens and charges. You will also pay a reasonable administrative fee with respect to any violation of this agreement, such as for repossessing or recovering the car for any reason.

**16.** **Error in Rental Charges.** The charges shown on the return record are not final and are subject to recalculation. You'll pay any undercharges and will receive a refund for any overcharges we discover on review.

**17.** **Prohibited Use of the Car & Voiding of Optional Services.** Certain uses of the car and other things you or a driver may do, or fail to do, will violate this agreement. A VIOLATION OF THIS PARAGRAPH, WHICH INCLUDES USE OF THE CAR BY AN UNAUTHORIZED DRIVER, WILL AUTOMATICALLY TERMINATE YOUR RENTAL, IS AN EXCLUSION TO AND VOIDS ALL LIABILITY PROTECTION AND ANY OPTIONAL SERVICES THAT YOU HAVE ACCEPTED, INCLUDING ADDITIONAL LIABILITY INSURANCE, PERSONAL ACCIDENT INSURANCE, PERSONAL EFFECTS PROTECTION, ROADSIDE SAFETYNET AND LOSS DAMAGE WAIVER OR PARTIAL DAMAGE WAIVER. IT ALSO MAKES YOU LIABLE TO US FOR ALL THE PENALTIES, FINES, FORFEITURES, LIENS AND RECOVERY AND STORAGE COSTS, INCLUDING ALL RELATED LEGAL EXPENSES, FEES AND COSTS.

It is a violation of this paragraph if:

**A.** You use or permit the car to be used: 1) by anyone either than an authorized driver, as defined in paragraph 16; 2) to carry passengers or property for hire; 3) to tow or push anything; 4) to be operated in a test, race or contest or on unpaved roads; 5) while the driver is under the influence of alcohol or a controlled substance; 6) for conduct that could properly be charged as a felony or misdemeanor, including the transportation of a controlled substance or contraband; 7) recklessly or while overloaded; 8) if rented in the United States, outside of the United States, or with our permission, Canada; or 9) if rented in Canada, outside of Canada, or with our permission, the United States; or

**B.** You or an additional driver, authorized or not: 1) fail to promptly report any damage to or loss of the car when it occurs or when you learn of it and provide us with a written accident/incident report or fail to cooperate fully with our investigation; 2) obtained the car through fraud or misrepresentation; 3) leave the car and fail to remove the keys or close and lock all doors, close all windows and the trunk and the car is stolen or vandalized; 4) intentionally or with willful disregard cause or allow damage to the car, or 5) return the car after hours and the car is damaged, stolen or vandalized.

**C.** Driving or operating this car while using a hand-held wireless communication device or other device that is capable of receiving or

transmitting telephonic communications, electronic data, mail or text messages shall be deemed a breach of this contract.

**18.** **Who May Drive the Car.** You represent that you are a capable and validly licensed driver. You agree that we have the right to verify the your license has been validly issued and is in good standing; and that we may refuse to rent to you if your license has been suspended, revoked or otherwise restricted in any way. We reserve the right to deny rental based upon information provided by the Motor Vehicle Department or the jurisdiction that issued your license. Except where otherwise specifically authorized by applicable law, only you, your spouse or domestic partner, or, if you rent from us under your employer's corporate account agreement, your employer or a regular fellow employee, incidental to business duties may drive the car, but only with your prior permission. The other driver must be at least 25 years old and must be a capable and validly licensed driver. There may be a charge for each additional driver authorized to drive the car, which charge is specified on the rental document, unless prohibited by law covering this rental.

**19.** **Liability Protection.** Anyone driving the car who is permitted to drive it by this agreement will be protected against liability for causing bodily injury or death to others or damaging the property of someone other than the authorized driver and/or the other up to the minimum financial responsibility limits required by the law of the jurisdiction in which the accident occurs. The limit for bodily injury sustained by one person includes any claim for loss of that person's consortium or services. When the law extends this protection to a non-permitted driver, the same limit will apply. Except where required by law to be primary, any protection provided by us shall be secondary to, and not in excess of, any applicable insurance available to you, or any other driver, from any other source, whether primary, excess secondary or contingent in any way. If this protection is extended by operation of law to anyone not permitted by this agreement to drive the car, or in any personal instance where coverage is not intended to be afforded by this agreement, the financial responsibility limits of the jurisdiction in which the accident occurs will apply. You agree that we can provide coverage under a certificate of self-insurance or an insurance policy, or both, as we choose. In any case, a copy of the policy and/or certificate will be available for your inspection at our main office. You understand that unless required by applicable law, we will not provide (a coverage for fines, penalties, punitive or exemplary damages; (b coverage for bodily injury to you, or your death while not a driver, or an member of your family or the driver's family members related by blood marriage or adoption residing with you, or them; or the drivers family, o to a fellow employee arising out of or in the course of employment; (c defense against any claims, unless we are required to provide primar protection, but in such event not after the applicable limits of protection that we furnish are tendered; (d) supplementary no-fault, noncompulsor uninsured or underinsured motorist coverage, and any other optional o rejectable coverage, and we and we reject all such coverages to the extent permitted by law. Where any of these coverages are required o implied by law, the limits shall be the minimum required unde applicable statute. Where permitted by law, you are rejecting uninsure or underinsured motorist and all optional automobile insuranc coverages and under any policy of insurance or certificate of self insurance in connection with this agreement, for you and all othe passengers in the car. You understand that uninsured and underinsured motorist coverage protects you and other passengers in a car for losse and damages suffered if injury is caused by the negligence of a drive

who does not have any insurance or has insufficient insurance to pay for losses and damages. There is no coverage in Mexico, and the car may not be taken into Mexico, under any circumstances, unless special arrangements are made at the renting location for separate Mexican insurance, where such insurance is available.

**20. Additional Liability Insurance (ALI) & Exclusions.** You'll pay for additional liability insurance coverage if available and you accept it. In that case, the coverage provided by us according to paragraph 19 above will be primary and the combined limits of liability provided under this coverage, plus, at your place of business about the payment of any past due Charges or Costs. You also agree that we or our collection agent(s) may access the personal $1,000,000 or $2,000,000, depending on the place of rental for bodily injury, death, or property damage for each accident, but not for more than the contracted $1,000,000 or $2,000,000 limit for each accident, instead of the basic limits stated in paragraph 19 above. This additional coverage will be provided to an authorized driver, as defined in paragraph 18, under a separate policy of excess liability insurance more fully described in the available brochure and is subject to all of the conditions and limitations described in paragraph 19 above, except that notwithstanding anything contained in this agreement, the terms of the policy will at all times control. **ALI does not apply to liability for bodily injury or property damage arising out of any "prohibited use of the car" as described in paragraph 17 of this rental agreement, and all of which are exclusions to ALI. Other exclusions to ALI are listed in the ALI policy. You understand that you will be charged the rate per day for a full day even if you don't have the car for the entire day.**

**21. Indemnification and Waiver.** You agree to indemnify us, our parent and affiliated companies for and hold us harmless from any loss, liability and expense that we incur arising out of the use of the car, including reasonable attorney's fees: (a) which exceeds the greater of either the minimum limits of financial responsibility pursuant to the motor vehicle insurance law of the applicable jurisdiction, or the limits of any liability protection that we furnish to you, or (b) which results from any unauthorized use or prohibited operation of the car. You waive any claim against us for incidental, special or consequential damages in connection with the rental. If the rental takes place at a location operated by an Avis System Licensee and a location relating to this transaction is made against Avis Rent A Car System, LLC, or Avis Car Rental Group, LLC, that alleges unfair, invalid, deceptive or unconscionable conduct that renting Avis licensee agrees to indemnify and hold Avis Rent A Car System, LLC, and Avis Car Rental Group, LLC, harmless against such claim, including the related costs and expenses.

**22. Repossessing the Car.** We can repossess the car anytime it is found illegally parked, being used to violate the law or the terms of this agreement, or appears to be abandoned. We can also repossess anytime we discover that a misrepresentation was made to obtain the car. You agree that we needn't notify you in advance. If the car is repossessed, you agree to pay the actual and reasonable costs incurred by us to repossess the car. You agree that such cost will be charged to the card you used to rent the car.

**23. Collections.** If you do not pay all amounts due to us under this agreement upon demand, including all charges, fees and expenses, including, without limitation, payment for loss of or damage to the car, towing, storage and impoundment fees, you agree to pay a late charge of 1 1/2% per month on the past due balance or the highest rate permitted by applicable law, whichever is less (collectively, "Charges").

If you use a toll, you will be charged a $3.95 convenience fee for each day of the rental including any days on which you would be tolled but not used, up to a maximum of $16.75 per rental month, plus incurred tolls at the maximum prevailing rate posted by the toll authority, regardless of the method of payment used. You agree to pay for any costs that we incur in seeking to collect such Charges including, without limitation, court costs and attorney's fees in addition to any administrative fees, cost recovery, insufficient funds fees and collection fees (collectively, "Costs"). If the law permits, you authorize us and our collection agent, to contact you or your employer, at your place of business about the payment of any past due Charges or Costs. You also agree that we or our collection agent(s) may access the personal information that you provided to us in an effort to collect any Charges or Costs under this section and may use the address provided by you on the Rental Document, or in any customer profile, as the place to send any demands or collection notices. In the event that you presented a credit or debit card **for payment, you understand that we may report such deficiency to an appropriate credit reporting agency and may authorize us to share that credit and debit card information with third party collection agents and further authorize us or our collection agents to charge any amounts due to us including, but not limited to, the Charges and Costs referenced above, to that credit or debit card.**

**24. Card Reserve.** You acknowledge that you have been informed that if you use a charge card your credit, up to an amount of the estimated total charges due under this agreement, as indicated on the rental document, based on your representation about this rental, may be set aside or reserved by the card issuer of the card, which you present for payment of your rental charges. Or, if you use a debit card funds in the account to which that card is linked may be set aside for the greater of the amount of the estimated total charges due under this agreement, based on your representation about this rental, as indicated on the rental document or the deposit amount indicated on signs at the location at which you rent at this time of rental. You consent to the reservation or setting aside of that estimated total amount at the time of commencement of the rental. You understand that we will authorize the release of any excess reserve or set aside upon the completion of your rental, and that your card issuer's rules apply to your credit line or your account being credited for such excess and may not be immediately released by your card issuer.

**25. Property in Car.** We are not responsible for loss of or damage to any property in or on the car, in any service vehicle, on our premises, or received or handled by us, regardless of who is at fault. You'll be responsible to us for claims by others for loss or damage.

**26. Meaning of "Car".** The word "car" in this agreement means the vehicle rented or its replacement, and includes tires, tools, equipment, accessories, plates and documents unless otherwise explicitly specified in this rental agreement.

**27. Changes.** Any change in this rental agreement or our rights must be in writing and signed by our president or a vice president.

**28. Currency Conversion.** If you use a credit or charge card that is issued by a financial institution outside of the United States and your charges are billed to us in a currency other than U.S. Dollars, the full amount of your charges will be converted to the card account's billing currency to us unless you submit a written request in advance to have the currency conversion performed by your card issuer. Our conversion will be based on a conversion rate published by Reuters and will incorporate a processing charge no higher than 3% applied to all amounts relating to this transaction. This charge will replace the currency conversion processing charge applied by your card issuer. You understand that your card issuer has a currency conversion process; that you have chosen not to use your card issuer's currency conversion process; and that you will have no recourse against your card issuer with respect to any matter related to the currency conversion or disclose thereof.

**29. OnStar and Satellite Radio.** You acknowledge that the car may be equipped with the OnStar System, which provides emergency and other services. You expressly authorize all of those services. You acknowledge that you understand that OnStar requires the car's electrical system and equipment, cellular service and satellite technologies to be available and operating for OnStar to function properly. Not all OnStar services are available on all cars. OnStar acts as a link to existing emergency and other service providers. Services are limited by, an neither OnStar nor Avis is liable for, conditions or services outside their control. An information (e.g. navigational route support) provided through OnStar is on a "as is" basis. OnStar, its service providers and Avis will not be liable to you or any use of OnStar in connection with the use of such information. You understand and an agree that OnStar may provide law enforcement with all necessary information to enable law enforcement to locate the car, if you fail to return this car when an where required under this agreement. You agree to release and hold us, and th OnStar service providers, harmless for any OnStar system failures. You also agree to limit claims against OnStar for damages for any losses under any theory to th pro rata portion of any 1 year of OnStar's terms and conditions and privacy policy. Not every vehicle is equipped with OnStar and no Satellite Radio. Renter shall not activate any service and in the event that a renter does activate a service in violation of this provision, the renter agrees to be completely responsible for the annual subscription fee(s). Some vehicles in our fleet may have the OnStar and o Satellite Radio equipment however such equipment may not be active. Unless you are advised that you have a car with OnStar and or Satellite Radio you will no have access to the systems and you should not rely upon them or take steps to activate them.

**30. Where2™ Global Positioning Satellite System.** At various locations, we may offer for rental a Where2 Global Positioning System for your use. If you rent such r unit you will pay the additional daily charge shown on the rental document. This unit is not part of the car. You are responsible for any loss or damage to the unit an its accessories regardless of cause even if you have accepted LDW. If the unit and/o its accessories are lost or damaged so as to, in our sole opinion, require repair o replacement, you will pay us its repair or full retail cost, which may be as much a $499. If you return the unit to a location other than the renting location without our authorization, you will pay us its repair or full retail cost. You will not use Where2 units to track or locate cars, other than those that are reported lost or stolen or as may be required by law enforcement agencies.

For a copy of our Privacy Notice, please go to www.avis.com/privacy or write t Privacy Officer, Avis, 6 Sylvan Way, Parsippany, NJ 07054.

©2013 Avis Rent A Car System, LLC

F-131(12/13)

# EXHIBIT B



| | |
|---|---|
| **RENTAL AGREEMENT NUMBER:** 167752896 | RECEIPT |

## Your Information

| | |
|---|---|
| Customer Name: | DAWN VALLI |
| Wizard Number: | ***28D |
| Avis Worldwide Discount: | LUNDBECK INC. |
| Customer Status: | AVIS FIRST |
| Method of Payment: | VISA XX4567 |

## Your Vehicle Information

| | | |
|---|---|---|
| Vehicle Number: | 67231780 | **Vehicle Exchange Area** |
| Vehicle Group Rented: | Standard SUV-5 Pass | Previous Car: 67289644 |
| Vehicle Group Charged: | Premium | Odometer In: 00083 |
| Vehicle Description: | ONG FORD EDG4 AWD | Total Driven: 00083 |
| License Plate Number: | VAVBB5015 | Location: DC2 |
| Odometer Out: | 15 | Date/Time : 12JUN14/1515 |
| Odometer In: | 428 | |
| Total Driven: | 496 | |
| Fuel Gauge Reading: | Full | |

## Your Rental

| | |
|---|---|
| Pickup Date/Time: | JUN 11,2014@2:00PM |
| Pickup Location: | 7432 NEW RIDGE ROAD |
| | BALTIMORE-WASHINGTON INTL APO |
| | HANOVER,MD,21076,US |
| | 410-859-1680 |

| | |
|---|---|
| Return Date/Time: | JUN 16,2014@10:51AM |
| Return Location: | BUILDING #305 FEDERAL CIRCLE |
| | JFK INTERNATIONAL AIRPORT |
| | JAMAICA,NY,11430,US |
| | 718-244-5404 |

**Additional fees may apply if changes are made to your return date, time and/or location.**

## Your Vehicle Charges (MIN 1 DAY)

| Rate Chart: | Free Miles: | Time and Mileage: | |
|---|---|---|---|
| **Miles:** | | **Your Discount:** | |
| Hourly: | 49.51 | 496 MI @ .40 = | 198.40 |
| Daily: | 66.00 | 5 DY @ 66.00 = | 330.00 |
| Ad'l day: | 0.00 | | |
| Weekly: | 396.00 | | |
| Monthly: | 1584.00 | **Time and Mileage:** | 528.40 |

## Your Optional Products/Services

| | |
|---|---|
| Optional Services Total: | 0.00 |

## Your Taxable Fees

| | |
|---|---|
| 11.11% Concession Recovery Fee | 59.97 |
| CUSTOMER FACILITY CHG 3.75/D | 18.75 |
| TRANSPORTATION FEE 1.85/DY | 9.25 |
| VEH LICENSE RECOUP 0.43/DY | 2.15 |
| **Sub-total-Charges:** | 618.52 |
| TAX 11.500% | 71.13 |

## Your Non-Taxable Products/Services

| | |
|---|---|
| **Your Total Charges paid:** | 689.65 |
| **Prepayment** | 0.00 |

| | | |
|---|---|---|
| **Net Charges:** | | USD 689.65 |
| **Your Total Due:** | | 0.00 |

Thank you for renting with Avis.
If you have any questions regarding eToll, please contact our eToll provider, HTA at 1-866-285-6050 or visit their web site at www.htallc.com.
For all other inquiries, please contact us at 1-800-352-7900 or www.Avis.com.
At Avis, we are committed to providing you with the best rental experience in the industry. We are in the business of treating people like people.

Your vehicle was rented to you by ERICA.        Your vehicle was checked in by MARK.

# EXHIBIT C



# DISTRICT OF COLUMBIA
## NOTICE OF INFRACTION
## METROPOLITAN POLICE DEPARTMENT



Mail Date:    06/18/14



## REGISTERED OWNER INFORMATION

F042654197
PV HOLDING CORP
7432 NEW RIDGE RD PO BOX 810
HANOVER, MD 21076

Your vehicle was photographed violating District of Columbia traffic regulations on the date and time listed below. Under District law, the registered owner of a vehicle is liable for payment of the fine for violations recorded using an automated traffic enforcement system.

POINTS WILL NOT BE ASSESSED.

For information on photo enforcement technologies, please visit http://mpdc.dc.gov/automatedenforcement.

If the ticket location includes (WZ) or (SZ), your fine has been doubled because the location is a work zone (WZ) or School Zone (SZ).



## VIOLATION INFORMATION
Ticket Number: F042654197
Issue Date:    06/11/14    Issue Time:  4:51:18 PM
Violation Code: T120
Description:    SPEED 16-20 OVR LIMT
Vehicle Tag:    MD 6BM8600  Vehicle Make: FORD
Vehicle Speed: 52mph   Posted Speed: 35mph
Location: 600 blk New York Avenue NE w/b

On the back of this notice you will find directions for answering this ticket. If you want to contest the ticket, penalty, or both do not pay the ticket until you receive your decision from DMV. Your answer to this ticket must be received by the payment due date listed below. Failure to pay the fine or contest the violation in the manner and time required is an admission of liability. This will result in additional penalties and the loss of your right to a hearing. For vehicles registered in the District of Columbia, the Department of Motor Vehicles will place a hold on the renewal of the owner's vehicle registration as long as the ticket is unpaid. Your vehicle may be immobilized or impounded if two or more unpaid tickets are on your record.

Detach and return this portion with your payment in the envelope provided,
or you may pay your ticket through the Internet at:  **http://www.dmv.dc.gov**

Ticket Number: F042654197         Vehicle Tag: MD 6BM8600         Mail Date: 06/18/14
Payment Due Date: 07/18/2014
Initial Fine Amount Due: $150.00
Total Amount Due After Payment Due Date: $300.00
Amount Paid: $

You can view full color versions of the image and video (if available) for this violation at: http://www.public.cite-web.com
Citation Number:              Pin Number:
04265419                        275047455


C4182-0000549-09

JUN 2 7 2014

0114169000427400100015000F042654197

### HOW DOES THIS TYPE OF SPEED ENFORCEMENT WORK?

**A 5° wide K-Band radar beam using Doppler radar is projected at a 20° angle across the road from the front of the stationary radar unit. The unit takes 200–300 speed calculations per second. Deployment logs are completed and validated by certified, trained police officers to ensure proper setup, testing, and operation of the unit during the deployment period. When the radar control unit detects a vehicle in the beam traveling at or greater than the speed specified for that location, it instructs the camera control unit to take a set of photographs of the detected vehicle. The camera will not take a photograph if the system malfunctions or if there is more than one vehicle in the radar beam. A copy of the certified log, photographs that show the violation and a close-up of the rear of the vehicle, will be provided as evidence for any adjudication of this ticket. Your images may or may not include roadway markings.**

---

### DIRECTIONS FOR ANSWERING

**YOU HAVE 60 CALENDAR DAYS FROM THE MAIL DATE OF THE TICKET TO PAY OR CONTEST THE TICKET.
IF YOU DO NOT PAY OR CONTEST THE TICKET WITHIN 30 CALENDAR DAYS OF THE MAIL DATE OF THE TICKET
YOUR FINE WILL DOUBLE.**

Please choose one of the following answers: 1) **Admit** Pay the full amount due; 2) **Admit with an Explanation** Request in writing that the fine associated with the violation be reduced; or 3) **Deny** Appear for an in-person hearing between the hours 8:30 am - 4:00 pm Monday - Friday, at Adjudication Services, 301 C Street, NW, Room 1157, Washington DC 20001. You must present at a hearing or submit with your mail adjudication request, any documents that you believe will support your defense, i.e. police report, diagrams or photographs. If you want to contest the ticket fine, penalty or both, do not pay the ticket until you receive your decision. For additional information, visit the DMV website at www.dmv.dc.gov.

There are four ways to pay: 1) **online** at www.dmv.dc.gov; 2) **by phone** (866) 893-5023, 3) **by mail;** 4) **in person** at Adjudication Services, 301 C Street, NW between the hours of 8:15 am and 5:00 pm, Monday through Friday. Make your check or money order payable to the D.C. Treasurer and include the ticket number(s), your vehicle license plate number. If you are paying by mail, return the bottom portion of this notice with your payment. Mail your payment to DC DMV Adjudication Services, P.O. Box 2014, Washington DC 20013. Do not send cash. Returned checks are subject to electronic redeposit for the face amount and a returned check fee of $65.