UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAWN VALLI, et al.,** *individually and on behalf of others similarly situated,*<br><br>    **Plaintiffs,**<br><br>  v.<br><br>**AVIS BUDGET RENTAL CAR GROUP, LLC, et al.,**<br><br>    **Defendants.** | **Civil Action No. 14-6072 (JBC)**<br><br>**OPINION** |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiffs Dawn Valli and Anton S. Dubinsky (collectively, "Plaintiffs") for class certification [Dkt. No. 146]. Defendants Avis Budget Group, Inc., Avis Budget Car Rental, LLC, Avis Rent a Car System, LLC, and Budget Rent a Car System, Inc. (collectively "Defendants") oppose Plaintiffs' motion [Dkt. No. 153]. The Court has fully reviewed the arguments made in support of, and in opposition to, Plaintiffs' motion, including the parties' oral argument conducted before the Honorable Claire C. Cecchi, U.S.D.J., on April 16, 2021 [*see* Dkt. No. 191 (transcript)]. For the reasons set forth below, Plaintiffs' motion for class certification [Dkt. No. 146] is **DENIED as to the Plaintiffs' proposed nationwide class and GRANTED as to a Preferred Members Subclass created at the Court's discretion pursuant to Rule 23(c)(4)(B).**

I.     **BACKGROUND**

Procedural History

On September 30, 2014, Plaintiff Dawn Valli ("Valli") initially filed a class action complaint against Defendants Avis Budget Rental Car Group, LLC and ATS Processing Services,

1

LLC ("ATS")[1] regarding their alleged "misrepresentations and omissions concerning charging [car rental customers] for alleged traffic infractions and an administrative fee without consent, without disclosure, and without the opportunity to contest the allegation." Dkt. No. 147 at 1. On January 22, 2015, Valli filed a First Amended Class Action Complaint against Avis Budget Group, Inc., Avis Rent A Car System, LLC, and ATS (collectively, "Defendants" or "ABG") alleging: (1) violations of the New Jersey Consumer Fraud Act ("NJCFA"); (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) unconscionability under the laws of New Jersey. *See* Dkt. No. 23. On March 9, 2015, Defendants filed a motion to dismiss, which was administratively terminated on April 12, 2016, pending completion of jurisdictional discovery. *See* Dkt. No. 42. On August 17, 2016, by stipulation of the parties, ATS Processing Services, a named defendant in the initial complaint, was dismissed without prejudice. *See* Dkt. No. 50. The following day, on August 18, 2016, Defendants filed another motion to dismiss. *See* Dkt. No. 49. On May 10, 2017, the Court denied Defendants' motion to dismiss in its entirety, finding, among other things, that the Rental Agreements—i.e., the contracts Defendants enter into with their car rental customers—neglected to state that "Plaintiff would not have the opportunity to contest any such fines, and that [ABG] would pay the fine prior to any adjudication of the underlying violation." Dkt. No. 65 at 10. The Court therefore concluded that "[t]hese facts may constitute an affirmative act of misrepresentation." *Id.*

After the Court denied Defendants' motion to dismiss, discovery commenced. *See* Dkt. No. 67. In response to Defendants' contention that Plaintiff only had standing for discovery related to the Avis brand because Valli was an Avis renter, and pursuant to the parties' stipulation, on June

---

[1] ATS, a third-party vendor that processes and administers the payment of fines accrued while customers rented vehicles from Avis and Budget, *see* Dkt. No. 1 at ¶ 4, was voluntarily dismissed as a Defendant in August of 2016. Dkt. No. 50.

26, 2018, Plaintiff filed a Second Amended Class Action Complaint adding Anton S. Dubinsky ("Dubinsky"), a Budget brand renter, as a plaintiff and adding defendants Avis Budget Car Rental, LLC and Budget Rent a Car System, Inc., wholly-owned subsidiaries of Avis Budget Group, as defendants. *See* Dkt. No. 95. But for certain allegations related to Dubinsky's car rental, the Second Amended Class Action Complaint closely tracked the First Amended Complaint. *Id.* On September 25, 2018, Defendants filed their Amended Answer to the Second Amended Complaint. *See* Dkt. No. 108.

On July 1, 2019, Plaintiffs filed the instant motion for class certification. *See* Dkt. No. 146. In their motion, Plaintiffs seek to certify the following class for the period of September 30, 2008, through the Present (the "Class Period"):

> All United States residents who rented an Avis or Budget brand vehicle during the Class Period and whose rented vehicle was the subject of an alleged parking, traffic, toll or other violation, where: (1) the ticket issuing authority sent notice of the ticket directly to ABG; (2) ABG or its agent paid the fine and/or court costs associated with the alleged violation; and (3) ABG charged the vehicle renter for such fine, penalty and court costs, and/or an associated administrative fee.

Dkt. No. 146-1 at 1-2. "As used to define the [proposed] Class, 'residents' includes natural persons and business entities. Excluded from the [proposed] Class are: (1) Defendants; (2) their officers, directors, and employees, (3) entities in which Defendants have a controlling interest; (4) affiliates, legal representatives and assigns of Defendants; and (5) judges who have presided over this case and members of their immediate families." *Id.* at 2.

On March 17, 2020, the Court referred the parties to mediation. *See* Dkt. No. 175. On June 30, 2020, after the parties reported the mediation was unsuccessful, the Court reinstated the motion for class certification. *See* Dkt. No. 180. On April 16, 2021, Judge Cecchi held oral argument on Plaintiffs' motion for class certification. *See* Dkt. Nos. 188, 190, 191 (transcript of oral argument).

On July 13, 2021, the parties advised that they were engaging in private mediation. *See* Dkt. No. 193. On October 27, 2021, the Court administratively terminated Plaintiffs' motion for class certification pending the receipt of letters from the parties advising as to the status of settlement/mediation. *See* Dkt. No. 198. On July 19, 2022, the Court directed the parties to submit supplemental briefing regarding predominance for each asserted claim and again administratively terminated Plaintiffs' motion pending receipt of the parties' submissions. *See* Dkt. No. 206. On February 28, 2023, Judge Cecchi signed and entered a consent order executed by the parties consenting to the jurisdiction of the Undersigned pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73. *See* Dkt. No. 218. On March 28, 2023, the Court reinstated Plaintiffs' motion for class certification. *See* Dkt. No. 221.

Statement of Facts

Valli, a Florida resident and Avis Preferred member, rented an Avis brand car from Defendants' Maryland facility at Baltimore-Washington International Airport on June 11, 2014, and was ticketed by an automatic traffic enforcement device which captured the rental vehicle going 52 mph in a 35-mph zone in Washington, DC on that same day (the "Infraction"). Dkt. Nos. 147 at 6; 153 at 5. On July 3, 2014, Avis sent Valli a copy of the Infraction and notified Valli that it had paid the fine and that Valli owed the $150 fine plus a $30 "handling" fee. Dkt. Nos. 147 at 6; 153 at 6. Although the deadline to contest the ticket was August 17, 2014, Avis indicated in its July 3, 2014 notice that it had already paid the $150 fine. Dkt. No. 147 at 6-7. After Valli did not pay the fee or fine through another payment arrangement, Avis charged the credit card on file. Dkt. No. 153 at 6.

Dubinsky, a Missouri resident, rented a Budget brand car from Defendants' facility at 780 McDonnell Road, San Francisco, California on November 25, 2014, that was captured running a

red light by a San Francisco-operated detection and enforcement device on November 26, 2014. Dkt. Nos. 147 at 7; 153 at 7. On December 5, 2014, the San Francisco Police Department issued a Summons charging a fine of $490 and stating that a response was due by December 29, 2014. Dkt. No. 147 at 7. On December 30, 2014, ABG notified Dubinsky that it had paid the $490 fine and that Dubinsky owed the $490 fine and a $30 fee, and that his failure to pay ABG by January 29, 2015, would result in his credit card being charged for the full amount. *Id.* After Dubinsky refused to pay the fine or fee, his credit card on file was charged. Dkt. No. 153 at 8.

The parties dispute the language in the relevant clause of the Rental Agreement, with Plaintiffs asserting "[t]he ABG Contract consists of the standardized and uniform Rental Jacket and Rental Document," which states the following:

> **Fines, Expenses, Costs and Administrative Fees.** You'll pay all fines, penalties, and court costs for parking, traffic, toll, and other violations, including storage liens and charges. You will also pay a reasonable administration fee with respect to any violation of this agreement, such as repossessing or recovering the car for any reason.

Dkt. No. 147 at 9. Plaintiffs aver that this clause "is the same for all Class Members across the United States, regardless of rental brand (i.e., Avis/Budget) or participation in an "affinity program" (i.e., Avis Preferred/Budget Fastbreak)." *Id.* at 10. Conversely, Defendants claim that "[t]he terms of Avis and Budget's rental agreements have changed at various times during the proposed class period," including different language related to "violations" and certain versions adding binding arbitration clauses and class action waivers. Dkt. No. 153 at 8-9. Defendants state that ABG's member programs, namely "Preferred" for Avis and "Fastbreak" for Budget, also contain different agreements than for non-members. *Id.* at 9.

## II.      LEGAL STANDARD

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). To meet the prerequisites of Rule 23, a plaintiff must establish both that the four requirements of Rule 23(a) have been met—those being numerosity, commonality, typicality, and adequacy—as well as that the pleading requirements of Rule 23(b)(1), (2), or (3) have been met. Fed. R. Civ. P. 23; *see also Hydrogen Peroxide*, 552 F.3d at 309 n.6.

In analyzing whether Rule 23's requirements have been met, "the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *Hydrogen Peroxide*, 552 F.3d at 307. This is true even if the class certification inquiry overlaps with the merits of the causes of action. *Id.* Additionally, if there is any doubt as to whether the Rule 23 requirements have been met, certification should be denied, regardless of the area of substantive law. *Id.* at 321 (discussing the 2003 Amendments to Rule 23).

The parties do not dispute that only subsection (b)(3) applies to the instant action. A Rule 23(b)(3) class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [(predominance)], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [(superiority)]." Fed. R. Civ. P. 23(b)(3); *see also Hydrogen Peroxide*, 552 F.3d at 310. "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out [at trial] in order to determine whether common or individual issues predominate in a given case." *Hydrogen Peroxide*, 552 F.3d

at 311 (citations and quotations omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)). Therefore, in addition to the four requirements of Rule 23(a), Plaintiffs in this case bear the burden of establishing that common issues of fact and law predominate and that a class action is superior.

## III.   DISCUSSION

As noted, Plaintiffs seek in their motion to certify the following class for the period of September 30, 2008, through the Present (the "Class Period"):

> All United States residents who rented an Avis or Budget brand vehicle during the Class Period and whose rented vehicle was the subject of an alleged parking, traffic, toll or other violation, where: (1) the ticket issuing authority sent notice of the ticket directly to ABG; (2) ABG or its agent paid the fine and/or court costs associated with the alleged violation; and (3) ABG charged the vehicle renter for such fine, penalty and court costs, and/or an associated administrative fee.

Dkt. No. 146-1 at 1-2. Plaintiffs assert the following claims on behalf of the proposed class: (1) violations of the NJCFA; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) unconscionability under the laws of New Jersey. *See* Dkt. No. 23. As set forth more fully below, the Court finds that class certification is appropriate as to a subclass consisting of nationwide Avis Preferred and Budget Fastbreak members (the "Preferred Members Subclass") with Valli as Class Representative, but that Plaintiffs' broader proposed class cannot be certified because the choice-of-law queries for a nationwide class would destroy predominance, and thus Plaintiffs fail to satisfy the predominance requirement under Fed. R. Civ. P. 23(b)(3).

As noted in Plaintiffs' Reply Brief, Defendants appear solely to oppose class certification on the grounds of typicality, predominance, and superiority. Dkt. No. 159 at 2. Though the parties

do not challenge the numerosity, commonality, adequacy, and ascertainability requirements for certification [*see id.*], the Court will consider all of the Rule 23 requirements in turn.

### A. Numerosity

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, [numerosity] has been met." *Bouder v. Prudential Fin., Inc.*, 2015 WL 857655, at *6 (D.N.J. Feb. 26, 2015). While the Court declines to adopt Plaintiffs' proposed class which would encompass millions of members, *see* Dkt. No. 147 at 15, the Court finds that even the Preferred Members Subclass satisfies the numerosity requirement, as Defendants stated during oral argument that there is likely over 50,000 Preferred Members nationwide and "the number of people who are preferred members who have gotten tickets is likely still significant in terms of numerosity." Dkt. No. 191 at 14:20-25. Accordingly, the numerosity requirement under Rule 23(a)(1) is satisfied.

### B. Commonality and Predominance

It is customary in Rule 23(b)(3) class actions for courts to jointly apply the Rule 23(a)(2) commonality requirement and the Rule 23(b)(3) predominance tests. *In re Prudential Ins. Co. of Am. Sales Practices Litig.* ("*Prudential I*"), 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ("*Prudential II*"), *cert. denied*, 525 U.S. 1114 (1999) (citing 1 Herbert Newberg & Alba Conte, Newberg on Class Actions ("*Newberg*") § 3.13, at 3-71). This approach has been approved by the Third Circuit. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) ("[T]he Rule 23(b)(3) predominance requirement, which is far more demanding, incorporates the Rule 23(a) commonality requirement. . . . Accordingly, we analyze the two factors

together.") (citations omitted); *see also Georgine v. Amchem Prods.*, 83 F.3d 610, 626 (3d Cir. 1996).

Commonality is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This requirement is satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Mendez v. Avis Budget Grp., Inc.*, No. CV 11-6537 (JLL), 2017 WL 5513691, at *4 (D.N.J. Nov. 17, 2017) (quoting *Prudential I*, 962 F. Supp. at 510). Here, the commonality requirement is met because there are several common questions, including the following which were identified by the Court in its Opinion denying Defendants' motion to dismiss:

> (1) [w]hether the "Rental Agreement failed to disclose that Defendants would charge car renters for any alleged traffic infraction without the opportunity to contest fines assessed against their rental vehicle during the rental period";

> (2) [w]hether Defendants' "lack of clear and comprehensive disclosure of Plaintiff's liability for fines accrued against the vehicle absent prior notice and the opportunity to contest such fines, is sufficient to alleged Defendants' intent or knowledge to conceal or omit a material fact";

> (3) whether ABG made "affirmative misrepresentations regarding the lack of opportunity to contest alleged fines" such as "that Plaintiffs would be charged for all violations accrued against the vehicle during the rental period" without also stating "that Plaintiff would not have the opportunity to contest any such fines, and that Defendants would pay the fine prior to any adjudication of the underlying violation"; and

> (4) [w]hether there is a "causal connection between the Defendants' unlawful conduct and the [] ascertainable loss when [plaintiffs were] charged a fine and administrative fee by Defendants for an alleged traffic violation, without the opportunity to contest such violation, through the pretext of [the] Rental Agreement with Defendants."

*Id.* at 15-16 (quoting Dkt. No. 65 at 9-10) (other citations omitted). Plaintiffs further assert that these findings by the Court were confirmed through the discovery conducted in this matter. *Id.*

While the Court finds that the commonality requirement is met here, for a class that is certified under Rule 23(b)(3), which is what Plaintiffs are seeking here, the Court must find that these common questions predominate over individual issues. *Prudential I*, 962 F. Supp. at 510–11. "To evaluate predominance, the Court must determine whether the efficiencies gained by class resolution of the common issues are outweighed by individual issues presented for adjudication." *Id.* at 511 (citing 1 Newberg § 4.25, at 4-81 to 4-86).

Plaintiffs assert the predominance requirement is satisfied here because this standard is "readily met" in "consumer cases." Dkt. No. 147 at 26 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "This is because 'the clear focus . . . is on the alleged deceptive conduct of the defendant, and not on the conduct of individual class members.'" *Id.* (quoting *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 108 (D.N.J. 2012)); *see also Sheinberg v. Sorensen*, 2016 WL 3381242, at *4 (D.N.J. June 14, 2016) (predominance satisfied where "proof of liability depends on the conduct of the defendant"); *Saini v. BMW of N. Am., LLC*, 2015 WL 2448846, at *5 (D.N.J. May 21, 2015) (predominance satisfied because defendants' policy was "subject to generalized proof" and "common to all class members"); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005) (in cases alleging defendant "made similar misrepresentations, non-disclosures, or engaged in a common course of conduct, courts have found that conduct to satisfy the commonality and predominance requirements"). Plaintiffs further argue that New Jersey law should be applied here to their four causes of action: (1) breach of the NJCFA; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) unconscionable conduct. *Id.*

Defendants provide numerous arguments for why Plaintiffs fail to meet the predominance requirement, the core of which is that New Jersey law does not apply to Plaintiffs' claims on a class-wide basis, and therefore choice-of-law queries will destroy predominance.

The Court agrees with Defendants that the predominance requirement fails as to a nationwide class due to choice-of-law issues. Courts have previously found that a class action cannot be maintained where different class members are subject to the laws of different states and have denied certification on those grounds. *See, e.g.*, *Mardis v. Jackson Hewitt Tax Serv. Inc.*, No. CV 16-2115, 2021 WL 1625118, at *8 (D.N.J. Apr. 27, 2021) (explaining the high burden on plaintiffs to group together and overcome variations in states' laws and denying certification of a class for failing to establish predominance for breach of contract and unjust enrichment claims). Where, as here, there is the potential for laws of all fifty states to apply to the class members, it would be impossible for the Court to instruct a jury. The issues of conflicts of laws swallow the common issues between class members; thus, the nationwide class proposed by Plaintiffs cannot proceed here. While Plaintiffs assert that New Jersey law applies to the class as a whole for each of their four asserted claims, the Court will utilize the applicable choice of law rules and assess each claim in turn to demonstrate that New Jersey law cannot apply to the class as a whole.

"A federal court sitting in diversity applies the choice of law rules of the forum state . . . to determine the controlling law." *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013) (citations omitted). When deciding choice of law, New Jersey uses the "most significant relationship test" from the Restatement (Second) of Conflict of Laws. *Id.* The first step of the choice-of-law inquiry is "to determine whether there is an actual conflict between the laws of the potential forums." *Id.* (citations omitted). If there is a conflict, then the second step of the test is to

determine which state has the "most significant relationship" to the claim. *Id.* at 207 (citation omitted). The Court will address the choice-of-law analysis for each of Plaintiffs' claims, in turn.

NJCFA

The parties agree that there are conflicts between the different consumer fraud protection laws in different states. *See* Dkt. Nos. 147 at 23; 153 at 14-19. The parties also agree that the NJCFA claim Plaintiffs seek to bring on behalf of the class is a fraud or misrepresentation claim and that Plaintiffs' car rentals and alleged traffic violations took place in a different state from where the representations were made. Therefore, the Court will use the test under § 148(2) of the Restatement to determine which state has the "most significant relationship" to the NJCFA claim. Dkt. Nos. 147 at 23; 153 at 14-19. The test balances the following factors:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2). As to (a), the proposed class of plaintiffs in this case come from all fifty states, and rented cars in all fifty states. This factor weighs against applying New Jersey law to any class members who did not rent cars in New Jersey. As to (b), the class members received Defendants' representations in the states where they entered into contracts to rent cars from Defendants. This factor weighs against applying New Jersey law to any class members who did not contract to rent cars in New Jersey. Regarding (c), Defendants made the representations in New Jersey by creating the contract there. This factor weighs in favor of applying New Jersey law. As to (d), the class members come from all fifty states, which weighs

against applying New Jersey law. As to (e), the class members rented the cars and drove them throughout all fifty states, which weighs against applying New Jersey law. As to (f), the class members rendered their performance by paying in whatever state they rented the car, which weighs against applying New Jersey law. Thus, five out of the six factors weigh against applying New Jersey law to the entire class for the NJCFA claim.

Further, courts in this Circuit have criticized the notion of applying New Jersey law in NJCFA cases where, as here, the defendant is merely headquartered in New Jersey and has made the alleged misrepresentations in New Jersey. *See Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 448-50 (D.N.J. 2012); *see also Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 461-62 (D.N.J. 2009). Therefore, New Jersey law cannot not be applied across the board to Plaintiffs' NJCFA claim, and there cannot be predominance as to Plaintiffs' nationwide class as proposed because different states' consumer fraud protection laws would need to be applied to each class member's claims.

<u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

The parties disagree as to whether there are relevant contract law conflicts regarding Plaintiffs' breach of the implied covenant of good faith and fair dealing claim. In their reply brief, Plaintiffs focus solely on addressing Defendants' arguments regarding statutes of limitations ("SOL") differences between states. Dkt. No. 159 at 11. Accepting as true Plaintiffs' argument that the states' SOL differences do not pose a serious obstacle for establishing predominance, a choice-of-law analysis for substantive contract law is still warranted. Courts in New Jersey have acknowledged that substantive contract law varies between different states. *See Agostino*, 256 F.R.D. at 464. The second step of the inquiry for contract claims requires an analysis balancing the five factors of the Restatement test. *Id.* Those factors are: (a) place of contracting, (b) place of

negotiation of the contract, (c) place of performance, (d) location of the subject matter of the contract, and (e) domicile, residence, nationality, place of incorporation, and place of business of the parties. Restatement (Second) of Conflicts of Laws § 188(2).

As to (a), the place of contracting for every class member depends on the state in which they rented their car. This weighs against applying New Jersey law for those putative class members who rented vehicles outside of New Jersey. As to (b), to the extent that contracts were negotiated, they were negotiated where every class member rented their car. This weighs against applying New Jersey law to a nationwide class. As to (c), the place of performance was wherever each car was rented. This similarly weighs against applying New Jersey law to the class. As to (d), the car rentals were the subject matter of the contract, which again occurred wherever the cars were rented. This weighs against applying New Jersey law. As to (e) (the domicile, residence, nationality, place of incorporation, and place of business of the parties), this factor equally favors Plaintiffs and Defendants. Altogether, none of the five factors weigh in favor of applying New Jersey substantive contract law. Therefore, New Jersey contract law cannot be applied to Plaintiffs' nationwide class as proposed, which leaves the predominance requirement unsatisfied as to this claim.

<u>Unjust Enrichment</u>

Regarding Plaintiffs' unjust enrichment claim, the Court finds unpersuasive Plaintiffs' argument that there is no conflict between the unjust enrichment laws of different states. *See Montich*, 849 F. Supp. 2d at 461 ("[I]t appears that based on the specific facts before me a conflict may exist between New Jersey's and California's application of the law of unjust enrichment, and thus, it would be necessary to turn to the second prong of the 'most significant relationship' test."); *Ortiz v. Sig Sauer, Inc.*, No. 19-CV-1025-JL, 2023 WL 1928094, at *9-11 (D.N.H. Feb. 10, 2023)

(providing an analysis of cases on the issue); *Cruz v. Lawson Software, Inc.*, No. CIV 08-5900 MJD/JSM, 2010 WL 890038, at *6 (D. Minn. Jan. 5, 2010) ("Clearly, there are material conflicts among many of the unjust enrichment laws of the various states in which putative class members reside.").

The second step of the analysis is again to determine which state has the "most significant relationship" to the claim, which, for unjust enrichment claims arising from a contract, requires the same § 188 analysis under the Restatement as that for breach of contract claims. *See* Restatement (Second) Conflict of Laws § 221 ("When the enrichment was received in the course of the performance of a contract between the parties, the law selected by application of the rules of §§ 187-188 will presumably govern one party's rights in restitution against the other."). Therefore, the result here is the same as in the breach of implied covenant of good faith and fair dealing claim, which is that New Jersey law cannot be applied over the laws of wherever individual class members reside or rented their cars. Therefore, predominance is not satisfied as to the unjust enrichment claim for Plaintiffs' proposed nationwide class due to the conflicts in laws between the states.

Unconscionability

Regarding Plaintiffs' unconscionability claim, the Court notes that neither party offers a sufficient conflict of laws analysis. However, in conducting its own analysis, the Court finds that there is a conflict between the laws of different states. *See Romero v. Allstate Ins. Co.,* 52 F. Supp. 3d 715, 734 (E.D. Pa. 2014) ("[T]here is variation among the states' laws and . . . some states only require either substantive or procedural unconscionability while others require both substantive and procedural unconscionability. This distinction alone is enough to make certification on a

limited issue (one that would not even finally resolve the unconscionability question) unworkable.").

As with the breach of implied covenant of good faith and fair dealing and unjust enrichment claims, the second step of the analysis requires a § 188 analysis, which weighs against applying New Jersey law to the entire class. Therefore, the Court finds that predominance is defeated as to the unconscionability claim as well.

<u>Certifying a Subclass of Preferred Members</u>

While the Court declines to find that predominance is met for Plaintiffs' proposed nationwide class, the Court nevertheless will *sua sponte* certify a subclass consisting of nationwide Avis Preferred and Budget Fastbreak members (the "Preferred Members Subclass") with Valli as Class Representative because the Court finds that predominance and, as stated elsewhere in this Opinion, the other class certification requirements are met as to this Subclass.[2] The parties do not dispute that there are no choice-of-law issues as to the Preferred Members Subclass because the members of the Avis Preferred/Budget Fastbreak programs all have choice-of-law provisions in their contracts, unlike in the contracts of non-preferred customers. *See* Dkt. No. 191 at 14:20-15:7. Such choice-of-law provisions mandate that New Jersey law applies to all claims asserted against Defendants regarding the Rental Agreement. *See id.* at 10:16-21, 15:18-25.

While Defendants assert there are still predominance issues with respect to proximate causation and damages, the Court is not persuaded these purportedly individualized issues outweigh the efficiencies gained by class resolution of the common issues. *See Prudential I*, 962 F. Supp. at 510–11. Defendants argue that individual issues predominate because each proposed

---

[2] The Court notes that district courts generally enjoy broad discretion "to assess the propriety of the class and ha[ve] the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create subclasses, and decertify the class whenever warranted." *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).

class member must prove they are innocent of the alleged violation, suffered damages, and cannot prove that ABG was the proximate cause of harm. In response, Plaintiffs urge that these arguments

> wholly ignore[] that ABG was not authorized to charge Plaintiffs[] and proposed Class Members[] based only on an allegation of a violation. Whether Plaintiffs or proposed Class Members might have been found guilty of the underlying ticket if they had the opportunity to challenge the allegation is irrelevant. The common harm — the unauthorized charges — was the same for each Class Member and was proximately related to ABG's corporate misconduct.

Dkt. No. 159 at 14 (citations omitted). The Court agrees with Plaintiffs' reasoning that Defendants focus too narrowly on each proposed class member's defense to an allegation of a violation when Plaintiffs are seeking to hold Defendants liable for purported misrepresentations that disallowed customers the opportunity to challenge such allegations of violations.

The Court is similarly not persuaded by Defendants' argument that predominance cannot be met because fifty-two percent of the proposed Class purportedly knew how the ticket process worked, paid Defendants for the violation, and then rented again from ABG, which Defendants asserts means these individuals "knew *exactly* how the violation process worked, did not care, and continued renting from Avis/Budget." Dkt. No. 153 at 33. As noted by Plaintiffs, ABG offers no evidence of such "knowledge" or indifference, and the Court is not persuaded that Defendants' policy of automatically billing a customer's credit card on file if they did not proffer another means of paying the fine and fee equates to knowledge of and ambivalence to the ticket process. The Court further agrees with Plaintiffs that there could be a "plethora of reasons why a Class Member might have rented again from ABG." Dkt. No. 159 at p. 14-15. Regardless, the Court finds such argument does not defeat predominance for the Preferred Members Subclass.[3]

---

[3] The Court notes that while it has the discretion to create a subclass and has elected to do so as to the Preferred Members Subclass who are all subject to the same choice-of-law provision in their rental agreements, such discretion should not and will not be applied to a subclass for New Jersey-based non-preferred rental car customers. This is because neither Valli nor Dubinsky have standing to serve as Lead Plaintiffs for such a proposed subclass since neither

Accordingly, while the Court declines to find that predominance is met for Plaintiffs' proposed nationwide class based on choice-of-law queries predominating over common questions, the Court will *sua sponte* certify the Preferred Members Subclass, finding that predominance is met as to this Subclass. The Court now turns to the remaining class certification requirements, which it finds are satisfied as to both the proposed nationwide class and the ultimately certified Preferred Members Subclass.

### C.  Typicality

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality lies where there is a strong similarity of legal theories or where the claims of the class representatives and the class members arise from the same alleged course of conduct by the defendant." *Mendez*, 2017 WL 5513691, at *4 (quoting *Prudential I*, 962 F. Supp. at 518). A court may find typicality even where there are factual differences between the claims of the class representatives and the claims of other class members. *Id.*; *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).

Defendants argue that Plaintiffs have failed to satisfy the typicality requirement for three reasons: (1) Plaintiffs' claims are subject to unique factual defenses not applicable to the class as a whole; (2) Plaintiffs' proposed class includes members who cannot be joined in this action because they agreed to waive participation in any class action and instead submit their claims to

---

Valli nor Dubinsky are residents of New Jersey, nor did they rent their vehicles from Defendants in New Jersey. However, unlike for Plaintiffs' proposed nationwide class, the Court finds that the choice-of-law query, the sole issue which the Court finds destroys predominance (and therefore class certification), would not defeat predominance for a subclass of New Jersey residents. This is because an individualized analysis as to each proposed class member would not be necessary for this subclass; instead, the Court finds that the balance of the Restatement factors enumerated above for each of Plaintiff's four proposed claims would weigh in favor of applying New Jersey law to a subclass of customers who reside in New Jersey and/or contracted to rent cars from Defendants in New Jersey.

binding bilateral arbitration; and (3) Plaintiffs' claims are not typical of claims relating to tolls and parking tickets.

The Court is not persuaded by Defendants' arguments and finds that Plaintiffs have satisfied the typicality requirement. Both Plaintiffs and the Proposed Class Members' claims arise from the same core practice and course of conduct, namely Defendants' policy of charging renters' credit cards for alleged violations plus an administrative fee without the opportunity to contest the fee. *See HoxworthBlinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992); Dkt. No. 147 at 19. Additionally, the claims between Plaintiffs and the Proposed Class Members stem from similar factual circumstances: Valli and Dubinsky were renters of an Avis or Budget vehicle which was the subject of an alleged parking or traffic violation, the ticket was sent directly to Defendants, and Defendants charged the renter for the fine and administrative fee. Dkt. No. 147 at 6-8; *see also Mendez*, 2017 U.S. Dist. LEXIS 190730, at *17-18 (noting a common core of facts among renters who rented from a specific company, were subject to a standardized contract, and were charged by the defendant for resulting e-Toll fees and upcharges); *Agostino*, 256 F.R.D. 437 at 478 (denying typicality in part based on different factual circumstances between the Subclass seeking monetary damages for bills they had paid versus the lead plaintiff who had not paid any portion of the bills she received).

Further support of a common practice by Defendants comes from statements by ABG's Vice President, who noted it was standard corporate practice to "pay ticket and bill customer," and ABG's Manager of Field Operations, J. Geib, who testified that "nationwide, the rental agreement is standard. There are a handful of variations for a handful of states, but the variations in language do not apply to the citations items, and the preferred terms and conditions are universal." Dkt. No. 148, Declaration of Joel B. Strauss, Submitted in Support of Plaintiffs' Motion for Class

Certification ("Strauss Decl."), Ex. V at ABCR00397637; Strauss Decl., Ex. W at 125:21-126:22 ("Geib Dep."). Geib also confirmed that this universal language remained the same from 2008 to the present. Geib Dep. at 125:21-126:22.

Defendants' argument regarding differences in parking violations and moving violations is likewise unpersuasive. As Plaintiffs point out, the proposed class only includes those "who rented an Avis or Budget brand vehicle during the Class Period and whose rented vehicle was the subject of an alleged parking, traffic, toll or other violation, where: (1) the ticket issuing authority *sent notice of the ticket directly to ABG. . . .*" Dkt. No. 146-1 (emphasis added); *see also* Dkt. No. 159 at 7. This language explicitly excludes those who were put on immediate notice by the physical ticket placed on the vehicle, thereby eliminating potential differences between the lead Plaintiffs and putative class members.

Although the variances between tolling violations and other citations represent factual differences, typicality is likely not destroyed. Typicality does not require that all proposed class members share identical claims. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 184 (3d Cir. 2001); *see also Hassine v. Jeffes,* 846 F.2d 169, 176-77 (3d Cir. 1988). Rather, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). Specifically, courts within the Third Circuit have held that "[i]f the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established . . . ." *Newton*, 259 F.3d 154 at 183-84.

Turning to Defendants' argument regarding the arbitration clause, Defendants also argue typicality is not met because Plaintiffs' proposed class includes members who cannot be joined in this action because they agreed to waive participation in any class action and instead submit their

claims to binding arbitration. Dkt. No. 153 at 36. Defendants cite two cases to support their position: *Jensen v. Cablevision Sys. Corp.*, and *Tan v. Grubhub. Id.* at 36-37 (citing *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) (holding that even the mere possibility of the arbitration provision being valid is sufficient to disqualify a named plaintiff who declined the provision from representing a class predominately comprised of individuals potentially subject to the agreement); *Tan v. Grubhub, Inc.*, No. 15-CV-05128, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016) (holding that a named plaintiff who has opted out of an arbitration and class action provision cannot satisfy the typicality requirements of Rule 23, as her claims are not typical of the class members who did not opt-out and are thus subject to the arbitration and class action waiver provisions)).

Additionally, Defendants suggest that their rental agreements began incorporating arbitration provisions from September 30, 2008 to the present. Dkt. No. 153 at 37. These provisions mandate that all disputes related to the rental be settled through binding bilateral arbitration. *Id.* This change was also allegedly implemented in the Avis Preferred and Budget FastBreak rental agreements. *Id.* Defendants aver that these arbitration provisions apply to a significant number of the proposed class members. Hence, Defendants assert that Dubinsky and Valli, who did not agree to such arbitration for their claims against Defendants, are not typical of the proposed class members who did. *Id.*

Plaintiffs challenge Defendants' argument regarding arbitration, citing the lack of any evidence provided by Defendants proving that the proposed class members agreed to an arbitration clause, a point Plaintiffs assert is corroborated by the ruling in *James v. Glob. Tel*Link Corp.* Dkt. No. 159 at 5 (citing *James v. Glob. Tel*Link Corp.*, 2016 WL 589676, at *3 (D.N.J. Feb. 11, 2016) (holding that the plaintiff, having been duly presented with and consenting to the terms of use,

which included an arbitration agreement, is obligated to arbitrate her claims against the defendant), *aff'd*, 852 F.3d 262 (3d Cir. 2017)). Plaintiffs emphasize that Defendants' argument predominantly rests on a declaration by C. Harp, who claims that ABG rental agreements and Avis Preferred and Budget FastBreak Agreements have incorporated arbitration provisions since 2008 without providing any supporting documentation. *Id.* (citing Dkt. No. 153-20, Declaration of Corey Harp, Submitted in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Harp Decl.") at ¶ 11). Plaintiffs further note that "the Declaration of J. Geib states that Plaintiff Valli's 2014 rental was subject to Avis' Preferred Agreement, [but] that Agreement lacks any such provision." *Id.* (citing Geib Decl. at ¶ 8).

Furthermore, Plaintiffs claim that the two out-of-circuit cases referenced by Defendants are irrelevant to the current case, as the arbitration provision in *Jensen v. Cablevision Sys. Corp.* encompassed 99% of the class, and in *Tan v. Grubhub, Inc.*, the plaintiff was just one of two individuals in California to opt-out of the class action waiver. *Id.* at 6 n.7 (citing *Jensen*, 372 F. Supp. 3d at 124 ("[T]he existence of an arbitration provision that potentially involves over 99 percent of the proposed class impacts the typicality of the Plaintiff's claim."); *Tan*, 2016 WL 4721439, at *3 ("[The Plaintiff] is one of just two individuals in California to opt out of the class action waiver provisions. All other GrubHub drivers in California are potentially subject to some form of class action waiver as set forth in the GrubHub service agreements.")). Plaintiffs argue that these cases are distinct as there is no evidence of an arbitration provision in the present case, thus negating any need for potential class members to opt-out. *Id.*

Plaintiffs further assert that even if an arbitration agreement bound some of the proposed class members, ABG has waived its right to arbitrate any claim. *Id.* As support, Plaintiffs note that "ABG has fully participated in the litigation and vigorously contested its merits for five years

22

without ever moving to arbitrate (or stating an intent to seek arbitration) until now." *Id.* (citing *Maher v. Northland Grp., Inc.*, No. CV172957KMJBC, 2019 WL 3245083, at *10 (D.N.J. July 19, 2019) (holding that a delay of twenty-two months in bringing the motion to compel arbitration was substantial and therefore denying the defendant's motion to compel arbitration)).

Plaintiffs more recently during oral argument asserted an additional argument, stating that "the arbitration clause doesn't bind these plaintiffs because, by its very terms, the claims that each and every one of the class members assert would be subject to a jurisdiction of a small claims court's authority." Dkt. No. 191 at 8:17-21. Plaintiffs believe that because all the claims are small in nature, with the largest being around $500, they would all be within the jurisdiction of a small claims court, and therefore the arbitration clause is not binding. *Id.* at 7:20-22.

While the Court is persuaded that an arbitration agreement did exist in the applicable Rental Agreements, and indeed, Plaintiffs seem to have conceded this point during oral argument, *see* Dkt. No. 191 at 7:13-7:16, it appears to the Court that Defendants may have waived their right to arbitration. Through their conscious decision to engage in litigation despite an existing arbitration agreement, litigants may consequently forfeit their right to arbitration. *See White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 341 (3d Cir. 2023). In *White*, a group of consumers brought a class action against a television manufacturer. *Id.* at 336. In response, the manufacturer moved to enforce arbitration; however, this Court dismissed the manufacturer's motion, and the manufacturer appealed. *Id.* at 338. The Third Circuit clarified that a waiver occurs when a party deliberately abandons an acknowledged right, and determining whether such abandonment occurred rests on examining the actions of the party in possession of the right within the specific circumstances of each case. *Id.* at 340. The Third Circuit held that the manufacturer had effectively waived its right to arbitration as a result of the manufacturer's apparent preference for litigation over arbitration.

*Id.* at 341. Notably, the manufacturer had been aware since 2018 that the plaintiffs had consented to arbitration, yet it did not assert its right to arbitration before the district court until May 2020. *Id.* Therefore, the manufacturer demonstrated a strategic choice to enjoy the benefits of litigation, which was inconsistent with an intent to arbitrate, leading to the conclusion that it had effectively waived its arbitration rights. *Id.*

In light of the *White* decision, the Court finds that Defendants have waived their right to arbitration in this case. Here, Defendants engaged fully in the litigation for five years without ever moving to arbitrate. Dkt. No. 159 at 6. The present situation is in contrast with *White*, where the defendant postponed moving to arbitrate for only two years, yet the Third Circuit still held that the defendant had waived its arbitration rights. Defendants' behavior in the instant matter mirrors that observed in *White*, where the defendant leveraged the ongoing litigation until it became beneficial to mention arbitration.

In light of the foregoing, the Court finds that Plaintiffs have satisfied the typicality requirement under Rule 23(a)(3).

### D.  Adequacy of Representation

Adequacy is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Courts look at two factors: '(1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class.'" *Mendez*, 2017 WL 5513691, at *6 (quoting *Prudential I*, 962 F. Supp. at 519).

Regarding the adequacy requirement, Plaintiffs state they have retained counsel with "substantial experience" litigating consumer class actions and other complex litigation who have devoted a significant amount of time and resources to this case. Dkt. No. 147 at 19-20. Regarding

the adequacy of Valli as Lead Plaintiff,[4] Plaintiffs assert there are no conflicts of interest, and that Valli is committed to "vigorously" prosecuting the case on behalf of all class members. *Id.* at 21. To support this assertion, Plaintiffs note that in the last five years, Valli has responded to thirty-seven requests for production of documents, twenty-seven requests for admission, and has verified more than forty-three interrogatory responses. *Id.* Based on the foregoing, the Court finds that the adequacy requirement under Rule 23(a)(4) is satisfied.

### E. Superiority

Superiority is the other requirement of a Rule 23(b)(3) class action, in addition to predominance. Rule 23(b)(3) provides courts with four non-exclusive factors to analyze superiority:

> (1) the interest of individual members of the class in individually controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action.

*Mendez*, 2017 WL 5513691, at *6 (citing *Prudential I*, 962 F. Supp. at 522).

Plaintiffs argue that superiority is satisfied based on the fact that a class action is essentially the only viable avenue for the putative class members, because it would be too expensive for any individual member to sue on their own. Dkt. No. 147 at 34-35. In response, Defendants argue that superiority is not satisfied because the claims are so individualized that it would be unfair to defend them all in one action. Defendants also claim that the class sought to be certified here has already been certified in *Mendez*. Dkt. No. 153 at 39-40. The Court will address Defendants' latter argument first.

---

[4] While Plaintiffs' briefing also addresses the adequacy of Dubinsky as Lead Plaintiff, the Court will not include him in its analysis on adequacy based on the Court finding *supra* that Dubinsky does not have standing to act as Lead Plaintiff for the Preferred Members Subclass, the sole class that the Court will be certifying in the instant Opinion.

In *Mendez*, the court certified a nationwide class related to purported dishonest business practices regarding the e-Toll service fee and toll upcharges. *Mendez*, 2017 WL 5513691, at *1. The Court finds that the purported class here differs from the class approved in *Mendez*, as Plaintiffs in the instant case seek to certify a class of customers "who rented an Avis or Budget brand vehicle during the Class Period and whose rented vehicle was the subject of an alleged parking, traffic, toll or other violation, where: (1) the ticket issuing authority *sent notice of the ticket directly to ABG* . . . ." Dkt. No. 146-1 (emphasis added). There is no reference to the e-Toll system in the instant case. Additionally, in *Mendez*, there is no indication that the customers committed toll violations; instead, the class complained of upcharges regarding automatic toll payments. Thus, the Court finds the proposed class here sufficiently different than that certified in *Mendez*.

Turning to the assessment of the four non-exclusive factors set forth in Rule 23(b)(3), in *Mendez* the court found the four factors were met and superiority was satisfied because (1) the claims of each class member were relatively small, which meant that few members would be able to bring claims absent the class action; and (2) few class members would be able to pursue litigation on their own, because their recoveries would be less than the cost of litigating; 2017 WL 5513691, at *6. The Court likewise finds that the four factors are satisfied here. As in *Mendez*, the claims of each proposed class member in this matter are very small, in amounts that come from minor traffic violations. Further, it would be prohibitively expensive to litigate this issue for any individual person. Therefore, based on the reasoning in *Mendez*, the Court finds that Plaintiffs have satisfied the superiority requirement.

## IV.      CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification [Dkt. No. 146] is

**DENIED as to the Plaintiffs' proposed nationwide class and GRANTED as to a Preferred**

**Members Subclass created at the Court's discretion pursuant to Rule 23(c)(4)(B).** An

appropriate Order, which includes the definition for the above-approved Preferred Members

Subclass, accompanies this Opinion.


  s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**