UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAWN VALLI, et al., *individually and on behalf of others similarly situated,*<br><br>   Plaintiffs,<br><br>   v.<br><br>AVIS BUDGET RENTAL CAR GROUP, LLC, et al.,<br><br>   Defendants. | Civil Action No. 14-6072 (JBC)<br><br><br>OPINION |

**CLARK, Magistrate Judge**

  **THIS MATTER** comes before the Court on two motions: (i) a motion by Defendants Avis Budget Group, Inc., Avis Budget Car Rental, LLC, Avis Rent a Car System, LLC, and Budget Rent A Car System, Inc. (collectively "Defendants" or "ABG") seeking to compel arbitration [*see* Dkt. No 246]; and (ii) a motion by Plaintiffs Dawn Valli and Anton S. Dubinsky (collectively "Plaintiffs") seeking partial summary judgment [*see* Dkt. No 241]. Both motions are opposed. *See* Dkt. Nos. 249, 251. The Court has reviewed the parties' submissions in support of and in opposition to the motions and decides the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion to compel arbitration [Dkt. No. 246] is **DENIED**, and Plaintiffs' motion for partial summary judgment [Dkt. No. 241] is **DENIED**.

**I.  BACKGROUND**

  Procedural History

  On September 30, 2014, Plaintiff Dawn Valli ("Valli") filed a class action complaint against Defendants Avis Budget Rental Car Group, LLC and ATS Processing Services, LLC

1

("ATS")[1] regarding their alleged "misrepresentations and omissions concerning charging [car rental customers] for alleged traffic infractions and an administrative fee without consent, without disclosure, and without the opportunity to contest the allegation." Dkt. No. 231 at 2. Avis Budget Rental Car Group and ATS each filed motions to dismiss on December 8, 2014. *See* Dkt. Nos. 17, 19.

On January 22, 2015, Valli filed a First Amended Class Action Complaint against Avis Budget Group, Inc., Avis Rent A Car System, LLC, and ATS alleging: (1) violations of the New Jersey Consumer Fraud Act ("NJCFA"); (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) unconscionability under the laws of New Jersey. *See* Dkt. No. 23.

On March 9, 2015, Defendants filed motions to dismiss [*see* Dkt. Nos. 26, 27], which were administratively terminated on April 12, 2016 pending completion of jurisdictional discovery. *See* Dkt. No. 42. On August 18, 2016, the ABG Defendants filed another motion to dismiss. *See* Dkt. No. 49. These motions were filed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In arguing for dismissal, Defendants did not mention in any of the moving briefs that Plaintiffs' claims were subject to arbitration. On May 10, 2017, the Court denied the ABG Defendants' motion to dismiss in its entirety, finding, among other things, that the Rental Agreements—i.e., the contracts Defendants enter into with their car rental customers—neglected to state that "Plaintiff would not have the opportunity to contest any such fines, and that [ABG] would pay the fine prior to any adjudication of the underlying violation." Dkt. No. 65 at 10. The Court noted that

---

[1] ATS, a third-party vendor that processes and administers the payment of fines accrued while customers rented vehicles from Avis and Budget, *see* Dkt. No. 1 at ¶ 4, was voluntarily dismissed as a Defendant in August of 2016. Dkt. No. 50.

2

"[t]hese facts may constitute an affirmative act of misrepresentation," which precluded dismissal. *Id.*

After the Court denied Defendants' motion to dismiss, discovery commenced with the entry of the Pretrial Scheduling Order on May 15, 2017. *See* Dkt. No. 67. Since then, discovery has been extended several times[2] and the parties raised several discovery disputes.[3] However, discovery is not fully complete, and since October 30, 2023, discovery has been stayed pending further order of the Court. Dkt. No. 234. On May 25, 2017, Defendants filed their Answer to the First Amended Complaint and raised arbitration as a potential affirmative defense. Dkt. No. 68 at p. 18-19, ¶¶ 33, 37, 38, Affirmative Defenses.

In response to Defendants' contention that Plaintiff only had standing for discovery related to the Avis brand because Valli was an Avis renter, and pursuant to the parties' stipulation, on June 26, 2018, Plaintiff filed a Second Amended Class Action Complaint adding Anton S. Dubinsky ("Dubinsky"), a Budget brand renter, as a plaintiff and adding defendants Avis Budget Car Rental, LLC and Budget Rent a Car System, Inc., wholly-owned subsidiaries of Avis Budget Group, as defendants. *See* Dkt. No. 95. Generally, the allegations related to Dubinsky's car rental in the Second Amended Class Action Complaint closely tracked the First Amended Complaint. *Id.* On September 25, 2018, Defendants filed their Amended Answer to the Second Amended Complaint and again mentioned arbitration as a possible affirmative defense. *See* Dkt. No. 108 at p. 24, ¶¶ 45, 49, 50, Affirmative Defenses.

On July 1, 2019, Plaintiffs filed their motion for class certification. *See* Dkt. No. 146. The motion was administratively terminated and reinstated multiple times over the course of the next three years in large part due to the parties engaging in both Court-ordered and private mediation.

---

[2] *See* Dkt. Nos. 75, 78, 81, 82, 118, 137, 149, 157, 172, 179, 185, 186, 189, 192.
[3] *See* Dkt. Nos. 84, 88, 110, 124, 125, 127, 129, 130, 143, 150.

*See* Dkt. Nos. 175, 180, 193, 198, 206. Thereafter, on February 28, 2023, Judge Cecchi signed and entered a consent order executed by the parties consenting to the jurisdiction of the Undersigned pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73. *See* Dkt. No. 218. On March 28, 2023, the Court reinstated Plaintiffs' motion for class certification. *See* Dkt. No. 221.

On October 10, 2023, the Court issued a decision on Plaintiffs' class certification motion denying Plaintiffs' proposed nationwide class and granting the motion as to a Preferred Members Subclass created at the Court's discretion pursuant to Rule 23(c)(4)(B). *See* Dkt. No. 231. More specifically, the Court determined the Class Period to be September 30, 2008 through the Present and defined the Preferred Members Subclass as:

> All Avis Preferred and Budget Fastbreak members with a United States address who rented an Avis or Budget brand vehicle during the Class Period and whose rented vehicle was the subject of an alleged parking, traffic, toll or other violation, where: (1) the ticket issuing authority sent notice of the ticket directly to ABG; (2) ABG or its agent paid the fine and/or court costs associated with the alleged violation; and (3) ABG charged the vehicle renter for such fine, penalty and court costs, and/or an associated administrative fee.

Dkt. No. 232. Additionally, the Court ordered that Valli be designated as the representative of the Preferred Members Subclass. *Id.* As part of its decision on the class certification motion, the Court also held that Defendants had waived their right to arbitration by having litigated the case against Plaintiffs for years under the Third Circuit's reasoning in *White v. Samsung Electronics Am., Inc.*, 61 F.4th 334 (3d Cir. 2023). Dkt. No. 231 at p. 23.

On October 24, 2023, Defendants filed a Petition for Permission to Appeal Under Rule 23(f) to the United States Court of Appeals for the Third Circuit. *See* Dkt. No. 246-1 at 8 (*citing Valli v. Avis, et al.*, App. No. 23-8047, at Doc. 1). Defendants requested, among other things, that the Third Circuit review the impact of an arbitration clause on class certification. *Id.* On October 30, 2023, following a telephone status conference held with the parties, the Court entered a stay of

proceedings and directed Plaintiffs to file a letter regarding their request to file a motion for partial summary judgment under the NJCFA, with Defendants filing a reply shortly after. Dkt. No. 234. On November 17, 2023, the Third Circuit denied Defendants' Petition in its entirety. Dkt. No. 237-1.

Thereafter, on December 14, 2023, the Court granted Plaintiffs leave to file their motion for partial summary judgment and concurrently permitted Defendants to file their motion regarding arbitrability. Dkt. No. 239. The motions were filed on February 2, 2024. *See* Dkt. Nos. 240, 241, 242, 243, 244. On February 7, 2024, Defendants filed an amended motion to compel arbitration. Dkt. No. 246.

Statement of Facts

Valli, a Florida resident and Avis Preferred member, rented an Avis brand car from Defendants' Maryland facility at Baltimore-Washington International Airport on June 11, 2014, and was ticketed by an automatic traffic enforcement device which captured the rental vehicle going 52 mph in a 35-mph zone in Washington, DC on that same day (the "Infraction"). Dkt. Nos. 244 at ¶¶ 3,7; 251-3 at ¶¶ 3,7. The D.C. Metropolitan Police Department issued a "Notice of Infraction" to PV Holding Corp., a subsidiary of Defendants, as the owner of the vehicle. Dkt. No. 251 at p. 2. The Notice of Infraction stated: "[y]our vehicle was photographed violating District of Columbia traffic regulations on the date and time listed below. Under District law, the registered owner of a vehicle is liable for payment of the fine for violations recorded using an automated traffic enforcement system." Dkt. No. 251-3 at ¶ 7 (*citing* Dkt. No. 243-1 Ex. G). The Notice of Infraction also specified how to contest the ticket, such as when and where to appear for a hearing and/or how to direct a mail adjudication request. *Id.*

On July 3, 2014, Avis sent Valli a "Vehicle Violation Notice" with a copy of the Infraction

5

and notified Valli that, per the rental contract, it had paid the fine and that Valli owed the $150 fine plus a $30 administrative fee. Dkt. Nos. 244 at ¶¶ 12, 13; 251-3 at ¶¶ 12,13. Although the deadline to contest the ticket was August 17, 2014, Avis indicated in its July 3, 2014 notice that it had already paid the $150 fine. *Id.* at ¶ 10. After Valli did not pay the fee or fine through another payment arrangement, Avis charged the credit card on file. *Id.* at ¶ 13.[4]

The parties dispute which agreement governed the rental and Defendants ability to pay and charge for the tickets. Plaintiffs assert that the relevant clause is contained in the vehicle Rental Agreement, which states the following:

> You'll pay all fines, penalties, and court costs for parking, traffic, toll, and other violations, including storage liens and charges. You will also pay a reasonable administration fee with respect to any violation of this agreement, such as repossessing or recovering the car for any reason.

Dkt. No. 244 at ¶ 4. Defendants state that Defendants' member programs, namely "Preferred" for Avis and "Fastbreak" for Budget, contain different agreements than for non-members ("Preferred Members Terms and Conditions"). Dkt. No. 251. Valli enrolled in Avis' Preferred Member Service on or about October 24, 2009. Dkt. Nos. 251-3 at p. 8, ¶ 1; 244 at p. 7, ¶ 1. Defendants claim that the Preferred Members Terms and Conditions actually govern Valli's rental when she received the Infraction at issue. *See* Dkt. 251. That Preferred Members Terms and Conditions states, in pertinent part:

> You'll pay all fines, penalties and court costs for parking, traffic, toll and other violations . . . You will also pay a reasonable administrative fee with respect to any violation of this agreement . . . if you do not pay all amounts due to us under this agreement upon demand, including all charges, fees, expenses, fines, penalties [and] administrative charges . . . associated with the rental of the vehicle including . . . parking, red light and traffic fines and penalties . . . we will take the following actions: (a) for all traffic and parking related offenses, you understand and agree

---

[4] Dubinsky, the other Named Plaintiff in this action, encountered similar circumstances when he was issued a Summons by the San Francisco Police Department for running a red light on November 26, 2014. *See* Dkt. No. 231 at p. 4-5. Since the Court discussed the facts pertaining to his rental in its Class Certification Opinion [*id.*], the Court need not reiterate them at length here.

6

> that all violations are issued to us as the owner of the vehicle and we, in our sole discretion may elect to pay the fines, penalties and fees and bill you directly for those amounts with a reasonable administrative fee.

Dkt. No. 251 at p. 7 (*citing* Dkt. No. 153, Ex. G-1 ¶ 26).

Defendants contend that the rental agreements are standard nationwide, with slight variation in a handful of states, and that the Preferred Members Terms and Conditions are universal. Dkt. No. 251-3 at ¶ 5. Further, Defendants claim the Preferred Members Terms and Conditions have been updated periodically throughout the class period and that the addition of the clause they claim governs Valli's rental and subsequent Infraction was effective January 1, 2014, prior to Valli's rental. Dkt. No. 251-3 at p. 8, ¶¶ 3-4.

Among the periodic updates of the Preferred Members Terms and Conditions was the addition of an alternative dispute resolution clause. As of April 1, 2016, Avis updated its Preferred Members Terms and Conditions to include an arbitration provision and class action waiver. Dkt. No. 246-1 at p. 5. The amendment for the arbitration clause was not retroactive and, therefore, did not apply to Valli or Dubinsky's 2014 rentals at issue. The added arbitration clause, in full, is as follows:

> **ARBITRATION**. Pre-Dispute Resolution Procedure: Before asserting a claim in any proceeding (including, but not limited to, in an individual arbitration or in a small claims proceeding), you and Avis agree that we shall give the other party written notice of the claim to be asserted 30 days before initiating a proceeding and make a reasonable good faith effort to resolve the claim. If you are intending to assert a claim against Avis, you must send the written notice of the claim to Attention: Avis Rent A Car System, LLC, 6 Sylvan Way, Parsippany, New Jersey, 07054 Attn: Legal Department. If Avis is intending to assert a claim against you, we will send the written notice of the claim to you at your address appearing in our records. NO SETTLEMENT DEMAND OR SETTLEMENT OFFER USED IN THIS PRE-DISPUTE RESOLUTION PROCESS MAY BE USED IN ANY PROCEEDING, INCLUDING AS EVIDENCE OR AS AN ADMISSION OF ANY LIABILITY OR DAMAGES (OR LACK THEREOF).
> Dispute Resolution (Not applicable if mandatory arbitration is prohibited by consumer protection legislation, such as in Quebec): Except as otherwise provided below, in the event of a dispute that cannot be resolved informally through the pre-

<u>dispute resolution procedure, all disputes between you and Avis arising out of, relating to or in connection with your rental of a car from Avis and these Terms and Conditions shall be exclusively settled through binding arbitration through the American Arbitration Association ("AAA") pursuant to the AAA's then-current rules for commercial arbitration. There is no judge or jury in arbitration. Arbitration procedures are simpler and more limited than rules applicable in court and review by a court is limited.</u> **<u>YOU AND AVIS AGREE THAT ANY [SIC] SUCH ARBITRATION SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION.</u>**

<u>Notwithstanding any provision in these Terms and Conditions to the contrary, if the class-action waiver in the prior sentence is deemed invalid or unenforceable, neither you nor we are entitled to arbitration. If you are an individual (instead of, for instance, a partnership, corporation, or other form of entity or non-natural person), in the event that (1) your claim is less than $10,000, and (2) you are able to demonstrate that the costs of arbitration will be prohibitive as compared to costs of litigation, Avis will pay as much of your filing and hearing fees in connection with arbitration as the arbitrator deems necessary to prevent the arbitration from being cost-prohibitive as compared to the cost of litigation. This arbitration agreement is subject to the Federal Arbitration Act. The arbitrator's award may be entered in any court of competent jurisdiction. Notwithstanding any provision in these Terms and Conditions to the contrary, we agree that if Avis seeks to delete or materially modify the agreement to arbitrate from this dispute resolution provision, any such deletion or material modification will not apply to any individual claim(s) that you had already provided notice of to Avis. Information on AAA, its rules and procedures, and how to file an arbitration claim can be found by contacting AAA at 800-778-7879 or on its website at http://www.adr.org.</u> Disputes and claims that are within the scope of a small claims court's authority, as well as disputes and claims regarding personal injury and/or damage to or loss of a car related to your Avis rental, are exempt from the foregoing dispute resolution provision.

Dkt. No. 246-1 at p. 13-14; Exhibit B ¶ 30.

The applicability of the arbitration clause is the central issue in Defendants' motion to compel, while the aforementioned Rental Agreement and Preferred Members Terms and Conditions are central to the issue of Plaintiffs' summary judgment motion. The Court will first address Defendants' motion to compel arbitration followed by Plaintiffs' motion for partial summary judgment.

## II.     Motion to Compel Arbitration

As the parties are aware, this Court previously held that Defendants have apparently waived their right to arbitration under the standard set forth by the Third Circuit in *White,* 61 F.4th at 334. Dkt. No. 231 at p. 23-24. Defendants now contend that *White* is not analogous with the circumstances in this matter and should not be followed. *See* Dkt. No. 246-1. Specifically, Defendants argue that they could not have moved to compel arbitration before the class was certified and, unlike in *White*, they were consistent in asserting their right to arbitrate by including it in their Answers and throughout this litigation. *Id.* Defendants claim that *Amansac v. Midland Credit Mgmt., Inc.*, No. CV 15-8798, 2022 WL 14563253, at *1 (D.N.J. Oct. 24, 2022) is more analogous to this matter and the Court should look to that decision for guidance. *See* Dkt. No. 246-1 at p. 24-25. Based upon their arguments, Defendants contend that any member of the Preferred Member Subclass who rented after April 1, 2016 must arbitrate their claims under the clause in the updated Preferred Members Terms and Conditions. *Id.*

In opposition, Plaintiffs argue that this Court should follow its previous holding that Defendants waived their right to arbitration and that their actions thus far have been inconsistent in asserting that right. Dkt. No. 249 at p. 4-5. Furthermore, Plaintiffs argue that the small claims court exception included in the arbitration agreement provides that these matters are exempt from arbitration. *See* Dkt. No. 249 at p. 8-9. Defendants, in turn, argue that the inclusion of a small claims provision, similar to the arbitration procedures, was "to bind the parties to a speedy, efficient, and cost-effective dispute resolution process." Dkt. No. 252 at p. 10.

### A.  Legal Standard

The Federal Arbitration Act (the "FAA") requires courts to compel arbitration of claims that the parties have agreed to arbitrate. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA provides that "[a] written provision ... to settle by arbitration a controversy

9

... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has interpreted the FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When considering a motion to compel arbitration, a court must consider whether (1) a "valid agreement to arbitrate exists" and (2) "the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

This Court has already acknowledged that an arbitration agreement did exist in the applicable agreements in its Class Certification Opinion. *See* Dkt. No. 231 at p. 23 ("[T]he Court is persuaded that an arbitration agreement did exist in the applicable Rental Agreements, and indeed, Plaintiffs seem to have conceded this point during oral argument.") (citation omitted). For the reasons that follow, the Court again finds that Defendants waived their right to compel arbitration through their actions in litigation.

### B. Discussion

"The contractual right to arbitrate, like any other right, can be waived." *KPH Healthcare Servs. v. Janssen Biotech, Inc.*, No. 20-5901, 2021 WL 4739601, at *9 (D.N.J. Oct. 12, 2021). Waiver is the "intentional relinquishment or abandonment of a known right." *Morgan v. Sundance*, 142 S. Ct. 1708, 1713 (2022) (internal quotation marks omitted) (*quoting United States v. Olano*, 507 U.S. 725, 733 (1993)). In the context of the right to compel arbitration, the waiver analysis focuses "on the actions of the person who held the right." *Id.* Such waiver occurs where a party has "intentionally relinquished or abandoned a known right." *White*, 61 F.4th at 339 (*quoting Morgan*, 596 U.S. at 417). A "case-specific waiver analysis is not susceptible to precise line-drawing." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 212 (3d Cir. 2010); *see also Gray Holdco, Inc. v. Cassady*,

654 F.3d 444, 460 (3d Cir. 2011) (stating "*Nino* does not establish a base line of what must be shown for acquiescence in pre-trial orders to waive the right to arbitrate."); *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 232 (3d Cir. 2008) ("the length of the time period involved alone is not determinative") (citation omitted). Instead, waiver is informed by the "circumstances and context of each case." *Gray Holdco*, 654 F.3d at 452.

"The 'circumstances and context' can include considerations such as the timeliness of the arbitration request, the extent of the movant's merits-based arguments up to that point, and its participation in discovery." *Hejamadi v. Midland Funding, LLC*, No. 18-CV-13203 (KSH) (CLW), 2024 WL 3159316, at *5 (D.N.J. June 25, 2024) (*citing Coronel v. Bank of Am., N.A.*, No. CV 19-8492 (ES) (MAH), 2022 WL 3443985, at *4, n.4 (D.N.J. Aug. 17, 2022) (concluding that "many of the *Hoxworth* factors relating to the moving party's litigation conduct . . . should still inform a court's determination regarding waiver," so long as they are applied to the updated standard)). "Waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Nino*, 609 F.3d at 208 (citations omitted); *see also Coronel*, 2022 WL 3443985, at *6 ("unreasonably delaying its motion for at least eighteen months, and by extensively participating in this litigation, [defendant] has waived its right to compel arbitration."); *Nino*, 609 F.3d at 199 (finding that the defendant waived the right to arbitrate where he actively litigated the case for more than 15 months and engaged in "no fewer than ten pretrial conferences" and "extensive discovery"); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 223 (3d Cir. 2007) (noting that the parties engaged in extensive discovery, and holding that the defendant therefore waived arbitration, where "both sides exchang[ed] several sets interrogatories, requests for production of documents, and expert reports, [and] participat[ed] in depositions of numerous witnesses").

11

Defendants' argument in support of their contention that they have not waived their right to arbitrate is two-fold. First, Defendants claim that because Valli, and later Dubinsky, "were not subject to arbitration at the outset of the case nor at any time thereafter because their rentals at issue took place prior to the addition of the arbitration and class waiver clauses," Defendants could not have raised the issue of arbitration prior to the filing of their Answer in May of 2017, when Defendants first introduced their contention regarding arbitration. Dkt. No. 246-1 at p. 20. Following that initial mention of arbitration, Defendants contend they have consistently indicated their intentions regarding arbitration not only by asserting arbitration as an affirmative defense in their Answers but also by raising the issue during various Court hearings and proceedings.

Secondly, Defendants argue that *Amansac*, 2022 WL 14563253, at *1, "underscores this district's principles that a defendant cannot move to compel arbitration until there is someone before the court whose claims are actually subject to an arbitration clause." Dkt. No. 246-1 at p. 25-26. Thus, Defendants argue, "until this court certified the Preferred Members Subclass, there was no one before the Court at any time against whom Defendants could have moved to compel arbitration." *Id.* at p. 26.

Despite Defendants' arguments to the contrary, the Court finds Defendants have waived their right to compel arbitration by delaying enforcement of their right and because their actions "evince a preference for litigation over arbitration." *See White*, 61 F.4th at 340. Although Defendants claim they frequently and consistently "at each stage of the litigation . . . apprised [Plaintiffs] and this Court of the possibility of arbitration" and therefore did not waive their right to arbitrate, the Court finds that Defendants' various suggestions of arbitration cannot overcome the untimeliness of their request and their extensive and lengthy participation in discovery. Dkt. No. 246-1 at p. 22.

Previously, Defendants sought dismissal of this matter on the merits on two occasions, with the latter of their motions to dismiss being filed in August 2016, a few months after the April 1, 2016 date Defendants updated its Preferred Members Terms and Conditions to include the arbitration provision and class action waiver. That motion to dismiss [Dkt. No. 49] did not mention arbitration.[5] Defendants first raised the issue of arbitration in their Answer to the Amended Complaint filed on May 25, 2017, over a year after the arbitration provision was enacted. Moreover, Defendants did not argue that arbitration was applicable to certain class members until their opposition to the class certification motion was filed on August 30, 2019, and Defendants did not formally seek to enforce arbitration until this motion was filed.[6] Instead, Defendants sought to litigate this case by engaging in extensive discovery over a number of years, in which they sought multiple extensions, raised disputes, attended many conferences, and attended both court-ordered and private mediation. While Defendants are indeed correct that the waiver of arbitration is "not a bright-line inquiry," Defendants cite to no authority in which a defendant litigated a case so heavily and for so long as the present matter and succeeded on a delayed motion to compel arbitration.

The Court's finding is unchanged by Defendants' reliance on *Amansac*. In *Amansac*, the Court denied a class certification motion finding that the named plaintiff could not satisfy the requirements of Federal Rule of Civil Procedure 23 because the named plaintiff, "unlike virtually every other putative class member," was "not bound to the arbitration and class waiver provisions" contained in the relevant agreements at issue. *Amansac*, 2022 WL 14563253, at *5 (citation omitted). In denying the plaintiff's motion for class certification, the Court "ma[d]e clear that at class certification, the question for this Court to decide is not the validity of the agreement but

---

[5] It is important to note that the arbitration clause was not enacted until two years into litigation. Thus, Defendants' initial motion to dismiss clearly could not have mentioned it.

[6] While Valli and Dubinsky were never subject to the arbitration agreement, this action was always conceived as a class action.

13

whether the presence of class members that are potentially subject to the [arbitration] provision satisfies the requirements of Rule 23." *Amansac*, 2022 WL 14563253, at \*6. The Court further stated that it would "not compel absent putative class members who are not before this Court to binding arbitration or issue a ruling regarding the enforceability of the [arbitration] provision." *Id.*

According to Defendants, *Amansac* "underscores this district's principles that a defendant cannot move to compel arbitration until there is someone before the court whose claims are actually subject to an arbitration clause" and Defendants therefore could not have moved to compel arbitration until the Preferred Members Subclass was certified. Dkt. No. 246-1 at p. 25-26. The Court does not agree. As an initial matter, *Amansac* is a class certification ruling and does not involve or discuss the issue of a waiver of a party's right to arbitrate. Furthermore, although unsuccessful, the defendants in *Amansac*, unlike Defendants here, moved to compel arbitration in the initial stages of the case. *Amansac*, 2022 WL 14563253, at \*3.

While Defendants are indeed correct that *Amansac* underscores the principle courts will not compel putative class members who are not presently before them to binding arbitration, "waiver is a unilateral concept" and to "decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 469 (9th Cir. 2023) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022)). Indeed, for waiver purposes, although a court cannot "compel nonparties to the case to arbitrate until after as class ha[s] been certified," the "knowledge of an existing right to arbitrate" does not require "a present ability to move to enforce an arbitration agreement." *Hill,* 59 F.4th at 469 (citing *In re Cox Enterps., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1119 (10th Cir. 2015)). Accordingly, the Court declines to adopt Defendants' contention that that *Amansac* requires a finding that

Defendants could not have asserted their right to arbitrate until after a decision on class certification.

While Defendants did indeed mention their right to arbitrate in their Answers, opposition to class certification, and at other times throughout litigation [*see* Dkt. No. 246-1 at p. 6-7], their formal assertion of their right to arbitration has come after the passage of extensive time and litigation. This fact, coupled with Defendants' actions throughout the discovery period, evinces a preference for litigation such that Defendants effectively abandoned their right to arbitrate. Therefore, the Court finds that Defendants waived their right to compel arbitration.

### III.   Motion for Partial Summary Judgment

Plaintiffs move for summary judgment on the issue of liability under the NJCFA (N.J. Stat. Ann. § 56:8-1, *et seq*.). Specifically, Plaintiffs argue that there is no genuine issue of material fact as to how the language in the Rental Agreement is interpreted. Thus, Plaintiffs claim that there is no dispute that Defendants practice of charging customers, including Plaintiffs, for "tickets," rather than "violations," without proper notice or the opportunity to dispute, constitutes an affirmative misrepresentation under the NJCFA. *See* Dkt. Nos. 241, 242. For the reasons that follow, the Court finds that a dispute as to a material fact exists which precludes summary judgment.

#### A.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A disputed fact is material where it would affect the outcome of

the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). If the movant carries this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott*, 550 U.S. at 380 (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

When considering a motion for summary judgment, all evidence submitted must be viewed in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–32 (1986); *Matsushita Elec. Indus.*, 475 U.S. at 587. At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

### B. Discussion

The NJCFA protects consumers from unconscionable and fraudulent practices in the marketplace. N.J. Stat. Ann. § 56:8-1, *et seq*. The statute is to be liberally construed in favor of protecting consumers. *Barry v. Arrow Pontiac, Inc*., 100 N.J. 57, 69 (1985). To establish a cause of action under the NJCFA, the plaintiff must demonstrate: "(1) an unlawful practice by the defendant; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between defendant's allegedly unlawful behavior and the plaintiff's ascertainable loss." *Arcand v. Brother Int'l Corp*., 673 F. Supp. 2d 282, 296 (D.N.J. 2009). The NJCFA prohibits several "unlawful practices," including:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby. . . .

N.J. Stat. Ann. § 56:8-2.

The NJCFA prohibits affirmative misrepresentations to consumers in connection with the sale of merchandise. *Fenwick v. Kay American Jeep, Inc.*, 72 N.J. 372, 376-77 (1977); *see* N.J. Stat. Ann. § 56:8-1 (defining the term "merchandise" to be "any objects, wares, goods, commodities, services, or anything offered, directly or indirectly to the public for sale", and defining the term "sale" to include any rental or attempted rental). An affirmative misrepresentation is a statement of fact that is found to be false, that is material to the transaction and that was made to induce the buyer to make the purchase. *Mango v. Pierce-Coombs*, 851 A.2d 62, 69 (N.J. Super. Ct. App. Div. 2004); *Arcand*, 673 F. Supp. 2d at 299 (finding a statement made in the connection with the sale or advertising of merchandise which was not factually accurate is enough to constitute an affirmative misrepresentation as unlawful conduct under the NJCFA). When a plaintiff claims an NJCFA violation is an affirmative act, a showing of intent is not required. *See* N.J. Stat. Ann. § 56:8-2; *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17-18 (1994); *see also Vagias v. Woodmont Properties, et al.*, 384 N.J. Super. 129, 133 (App. Div. 2006) (allegations of affirmative acts constituting a violation of the NJCFA "do not require proof of intent to mislead").[7] Instead, courts focus on the "capacity" of the misrepresentation to mislead consumers. *Cox*, 138 N.J. at 17 (*citing Fenwick*, 72 N.J. at 378 ("The capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice.")).

---

[7] Such a showing is necessary if the claimed violation is an omission. *Cox*, 138 N.J. at 18.

17

Plaintiffs assert Defendants' Rental Agreement violates the NJCFA by misrepresenting the conditions under which rental car customers are charged for "violations." *See* Dkt. No. 242 at p. 5. Specifically, Plaintiffs argue Defendants' practice of charging customers for traffic *tickets* is inconsistent with the terms of the Rental Agreement, which states that customers would be charged for *violations*. *Id.* Thus, Plaintiffs allege Defendants, by conflating the terms "*tickets*" and "*violations*" and charging Plaintiffs for tickets plus an administrative fee upon the issuance of a ticket, make an affirmative misrepresentation in the Rental Agreement. Dkt. No. 242 at p. 7.

To support the alleged misrepresentation, Plaintiffs argue that "[a] ticket is not a violation. A ticket is nothing more than an allegation of a violation." Dkt. No. 242 at p. 7. In support of this position, Plaintiffs cite to Black's Law Dictionary, which states that a "violation" is "[a]n infraction or breach of the law; a transgression" or "[t]he act of breaking or dishonoring the law; the contravention of a right or duty." VIOLATION, Black's Law Dictionary (11th ed. 2019). Comparatively, Plaintiffs argue that a "ticket" is a "court-issued writ that commands a person to appear at a certain time and place to do something demanded in the writ, or to show cause for not doing so." TICKET, Black's Law Dictionary (11th ed. 2019) (citing to CITATION, Black's Law Dictionary (11th ed. 2019)).

Defendants counter that their practices are clear, standard in the industry, do not constitute misrepresentation, and that Plaintiffs themselves caused the loss suffered. *See* Dkt. No. 251 at p. 7, 8. First and foremost, Defendants argue that the Rental Agreement is not what governs here, but rather that the ability to charge for tickets comes from the Preferred Members Terms and Conditions. Dkt. No. 251. Furthermore, Defendants argue that Black's Law Dictionary, which Plaintiffs also rely on, indicates that "violation" can also mean "infraction" and does not necessarily require a finding of wrongdoing. Dkt. No. 251 at p. 16. Defendants maintain the term

18

"violation" can reasonably be interpreted to include the issuance of a ticket, and contend that their practice of paying and subsequently charging for tickets, considered and described as violations in the Rental Agreement, is the industry standard. *Id.* Defendants also highlight that the notice of the violation is titled "Notice of Infraction," and the D.C. Code which Valli breached interchanges the term "violation" with "infraction." Dkt. No. 251 at p. 18.

In a motion for summary judgment where, as here, the issue is one of contract interpretation, summary judgment is only proper where the contract is clear and unambiguous as a matter of law, meaning that the contract can be read only one way. *Starr v. Katz*, 1994 WL 548209, at *7 (D.N.J. Oct. 5, 1994). If an ambiguity is found, then summary judgment is precluded because the ambiguity creates a question of fact only a factfinder can resolve. *Id.* In evaluating whether a contract is ambiguous, a court should not "torture the language of a contract to create ambiguity where, fairly considered, none exists." *Id.* Instead, courts consider the words used in the contract as well as counsel's suggested alternative meanings, supported by extrinsic evidence. *Id.* If a reasonable inference in the nonmovant's favor regarding the interpretation of a contract can be found from any evidence, regardless of source, then summary judgment cannot be granted. *Vanguard Telecomm., Inc. v. Southern New England Tel. Co.*, 722 F.Supp. 1166, 1178 (D.N.J. 1989).

Here, viewing the evidence in the light most favorable to Defendants, the Court finds Plaintiffs' motion for summary judgment must be denied. Since the primary issue here is the interpretation of a contract (i.e., the Rental Agreement/Preferred Members Terms and Conditions), there cannot be any ambiguity as to the meaning of the language if the Court is to consider granting summary judgment. However, the use and interpretation of the word "violations" is not unambiguous and may be open to more than one interpretation, especially considering the evidence

submitted by both sides. First, the Black's Law definition of "violation" submitted by Plaintiffs uses the word "infraction," which is also used on the ticket—the "Notice of Infraction"—by the D.C. Code. Moreover, the D.C. Code freely interchanges the term "violation" with "infraction." Thus, the Court finds Defendants have offered sufficient evidence to create a genuine dispute as to whether an affirmative misrepresentation and the capacity to mislead exists based the use of the term "violation" in either agreement.

Furthermore, the dispute as to which agreement applies is material to the issue of affirmative misrepresentation. In theory, Valli was an Avis Preferred Member and would be subject to the Preferred Members Terms and Conditions. Additionally, she executed a Rental Agreement with Defendants to which she is also subject. The conflict between the two agreements alone is enough to raise a dispute of a material fact. For these reasons, summary judgment is denied, and these issues are to be decided by a jury.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration [Dkt. No. 246] is **DENIED**, and Plaintiffs' motion for partial summary judgment [Dkt. No. 241] is **DENIED.** An appropriate Order accompanies this Opinion.

DATED: September 30, 2024                                     /s/ James B. Clark, III
                                                              **JAMES B. CLARK, III**
                                                              **United States Magistrate Judge**